(No. 5242.  Decided May 4, 1905.)

GEORGE E. FILLEY, *as Administrator of the Estate of Eliza J. Murphy, Deceased, Respondent,* v.

A. H. CHRISTOPHER, *Appellant.*[1]

FIXTURES—WHAT ARE—FURNACE, BOILER AND PIPES.  A furnace and boiler in a theater building, resting upon solid foundations, and which could not be removed without tearing away masonry, together with the pipes and radiators connected therewith, are fixtures and pass upon a sale of the realty.

SAME—OPERA CHAIRS, CURTAINS, AND APPLIANCES IN THEATER. Opera chairs in a theater screwed to the floor, drop curtains, scenery, and the usual appliances, are fixtures and part of the realty within the criterion:  (1) actual annexation to the realty or appurtenant thereto;  (2) application to the purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party.

SAME—EVIDENCE OF INTENTION OF PARTY. The surrender of a ticket box with the sale of a theater building, by the person who placed it therein, may be considered as indicative of his intention, upon the question of its annexation to the realty as a fixture.

SAME—INSTRUCTIONS.  Reading judicial decisions to the jury on the complex question of what constitutes a fixture is not to be commended.

1 Reported in 80 Pac. 834.

SAME—REMOVAL—INJURY TO BUILDING AND VALUE OF ARTICLE. Instructions to the jury on the subject of what constitutes a fixture should not give too much prominence to the injury to the building from removal and the value of the article removed, which are circumstances to be considered, but not controlling.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered January 30, 1904, upon the verdict of a jury rendered in favor of the plaintiff, in an action of replevin. Reversed.

*Troy & Falknor,* for appellant.

*Israel & Mackay,* for respondent.

PER CURIAM.—On the 16th day of November, 1894, John Miller Murphy and Eliza J. Murphy, his wife, mortgaged to A. A. Phillips, trustee, certain real property in the city of Olympia, upon a portion of which was situate the Olympia theater, for the purpose of securing the payment of certain indebtedness due the First National Bank of Olympia and others. On the 5th day of January, 1902, this mortgage was duly foreclosed, and the mortgaged premises ordered sold by a judgment and decree of the superior court of Thurston county. On the 8th day of March, 1902, the defendant in this action became the purchaser of the lots and lands upon which the Olympia theater is situate, at sheriff's sale, and is still the owner thereof. On the 3d day of November, 1895, Eliza J. Murphy died, intestate, and the plaintiff is the administrator of her estate. As such administrator, he brings this action in claim and delivery, to recover the possession of certain goods and chattels, situate in said Olympia theater, claiming the same as personal property belonging to the estate of said deceased. The defendant, on the other hand, claims that the property in controversy is not personal property, but is a part of the realty, and passed to him under the foreclosure sale above mentioned. The character of this property is the principal question involved

in the case. The plaintiff had judgment below, and the defendant appeals.

The motion to strike from the transcript, and the motion to dismiss the appeal, are denied.

So many different articles of property are involved that a separate discussion of each would subserve no useful purpose. At the close of the testimony, the appellant requested the court to instruct the jury to return a verdict in favor of appellant, as to certain articles of property particularly described, and we think a discussion of the questions involved in this request will be a sufficient guidance for the lower court upon a retrial of the case. The following articles were included in this request:

"One furnace, Denning No. 2, automatic with boiler; piping and plumbing material with radiators; triangle display board on sidewalk; 1 money drawer; 1 ticket box; 146 chairs, (opera), No. 10 (automatic); 134 chairs (opera), No. 6 (Torser back); 220 chairs (opera), balcony veneer; 1 drop curtain, damask; 1 drop curtain; 12 sets scenery; 1 lot stage rigging consisting of 50 sets of lines, chives, and blocks; set of gas light switches and by passes; gas piping throughout the house and fixtures; water plumbing, electric switch board, and 140 lights, fixtures and one dimmer, grooves, chains, belaying pins, chives."

The furnace and boiler in question were located in the basement of the theater building, and rested on a foundation built up through the floor. They were encased in brick work, and could not be taken out or removed without tearing away the masonry. The pipes extended from the boiler to the radiators, in different parts of the building, for the purpose of heating the same. Some of the radiators were not attached to the building otherwise than to the pipes connected therewith. Others were made of piping and hung on brackets. The pipes could be detached from the boiler by unscrewing them, and could be removed without material injury to the building, except to leave the holes through which they passed. The triangle display board was built of ship lap, and nailed

to the sidewalk in front of the theater building. It was so constructed as to display a bill on either side of it. One of the respondent's witnesses testified that it was nailed down to keep people from turning it over. The money drawer ran in a groove underneath, and next to, the ticket window. It could be removed by simply loosening a screw. The ticket box consisted of a box four inches deep, made in two parts, which closed together. It contained a diagram of the theater, and slits were cut in it to represent each seat and its number. It was not attached to the building in any way. The five hundred chairs were situate in the body of the theater and in the balcony. The chairs were screwed to the floor, and were such as are in common use in such places. The drop curtains and scenery were attached to the staging, and could be removed without material injury to the building. The stage rigging was used for the purpose of handling the curtains and scenery. The electric switch was used for the purpose of lighting the different parts of the house, as necessity or convenience might require.

Little could be gained by a review of the authorities as to what constitutes a fixture. As said by this court in *Philadelphia Mtg. & Trust Co. v. Miller*, 20 Wash. 607, 56 Pac. 382, 72 Am. St. 138, 44 L. R. A. 559, "There is a wilderness of authority on this question of fixtures, and a hopeless conflict of decision." The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold. Within this rule, we are of opinion that all, or nearly all, of the articles above referred to are fixtures, and a part of the realty.

Nearly all the authorities concur in holding that a furnace and boiler, together with the radiators and piping connected therewith, such as are above described, constitute a part of

the realty. *Thielman v. Carr*, 75 Ill. 385; *Folsom v. Moore*, 19 Me. 252; *Main v. Schwarzwaelder*, 4 E. D. Smith (N. Y.) 273; *Raddin v. Arnold*, 116 Mass. 270; *Hopewell Mills v. Taunton Sav. Bank*, 150 Mass. 519, 23 N. E. 327, 15 Am. St. 235, 6 L. R. A. 249; *Goodin v. Elleardsville Hall Ass'n*, 5 Mo. App. 289; *Capehart v. Foster*, 61 Minn. 132, 63 N. W. 257, 52 Am. St. 582; *Woodham v. First Nat. Bank*, 48 Minn. 67, 50 N. ,W. 1015, 31 Am. St. 622. These views are not inconsistent with the decision in *Philadelphia Mtg. & Trust Co. v. Miller*, *supra*. In that case the boiler was in no manner attached to the building except by its plumbing connections.

We think the same rule applies to the opera chairs attached to the floor, the drop curtains, scenery, and appliances for raising and lowering the same, and the electric switch board. All these articles were attached or annexed to the building. They were a permanent accession to the freehold, and were no doubt intended as such. In *Grosz v. Jackson*, 6 Daly (N. Y.) 463, opera chairs such as are here involved were held to be a part of the realty. In *Capehart v. Foster*, *supra*, it was held that the title to steam radiators, an electric enunciator, and an office desk used in a hotel, passed by a foreclosure sale of the hotel. In *Woodham v. First Nat. Bank*, *supra*, it was held that the bar and back bar in a saloon passed by a foreclosure of the mortgage on the saloon building.

The other items included in the request are not of sufficient value to warrant an extended discussion. We deem it sufficient to say that, in our opinion, the bill board and the money drawer were sufficiently annexed to the building to become fixtures; and the ticket box, having passed into the hands of the purchaser by consent of the former administrator, should remain there. It has no value except in connection with the theater. While the present administrator is not estopped by the act of his predecessor in surrendering the possession of these articles to the purchaser at the

foreclosure sale, nevertheless, the former administrator was the person who placed these articles in the theater building, and his act in surrendering possession to the purchaser was indicative of his view of their annexation to and connection with the building, and is entitled to consideration for that reason. On the same ground, the documentary evidence offered should have been received. The elimination of the above articles from the case disposes of practically all the errors assigned.

The witnesses, whose competency on the question of values was challenged, had, in our opinion, sufficient knowledge on the subject to be of some aid to the jury. The reading of judicial decisions to a jury on the complex question of what constitutes a fixture has a tendency to confuse and bewilder, rather than to enlighten, and the practice is not to be commended. It is unnecessary to comment further upon the question, as the judgment must be reversed for the reasons above stated. The injury that will result to the freehold by the removal of an article, and the value of the article after removal, are, no doubt, circumstances to be taken into consideration in determining whether a given article is a fixture or a chattel; but they are not controlling, and too much prominence was given these two features in the charge of the court.

This disposes of all the errors assigned. The judgment is reversed, with instructions to dismiss the action as to the articles enumerated in the request incorporated in this opinion, and for a new trial as to the remainder of the case, in accordance herewith.