[No. 38206. Department One. July 7, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. CORVALLIS SAND AND GRAVEL COMPANY et al., *Appellants.*\*

*Reported in 416 P.2d 675.

*Robinson, Landerholm, Memovich, Lansverk, Whitesides & Marsh,* for appellant Corvallis Sand and Gravel Company.

*The Attorney General* and *Theodore O. Torve, Assistant,* for respondent.

HUNTER, J.—This is a condemnation action instituted by the state against Corvallis Sand & Gravel Company, an Oregon corporation, and other defendants who took no active part in the conduct of the trial or this appeal. The purpose of the action is to acquire property necessary for the construction and maintenance of Primary State Highway No. 8 in Clark County. Corvallis Sand & Gravel Company appeals from the judgment entered upon a jury verdict of $5,000.

The state's condemnation petition sought to condemn .28 acres of upland owned by appellant, appellant's right to remove sand and gravel from certain tidelands (these tidelands will hereafter be referred to as appellant's tidelands), and the easement rights of access to appellant's upland and tidelands. It was necessary in pretrial proceedings for the trial court to resolve several questions dealing with the exact location of appellant's boundary lines for purpose of this suit. Since the principal issue on this appeal concerns

the proper location of one of these boundary lines, we incorporate into this opinion a drawing, submitted by the appellant, of the land and water area involved in the case, together with an aerial photograph of the area (defendant's exhibit 27).

The upland in question is at the tip of a headland formed by the confluence of the Columbia and Washougal Rivers and approximately bounded by points G, B, E and F on the drawing. Between this headland and Lady Island to the west, lies a sand and gravel bar. The right of way for Primary State Highway No. 8, shown by the dashed lines on the drawing, proceeds from Lady Island across the gravel bar and onto the headland. In addition to the upland, appellant owns the right to remove sand and gravel from the tidelands which extend from the shoreline between points A and C. The tidelands which extend westerly from the line between points C and E belong to the state. The sideline

boundary of those tidelands from which appellant has the right to remove sand and gravel had never been established by deed. The sideline drawn by the ruling of the trial court was between points C and D, perpendicular to the meander line which forms the southwest boundary of appellant's upland.

Appellant's first contention is that the trial court's ruling in establishing the sideline, designated by the dotted line C-D, was incorrect. There is no dispute that point C is the correct point on the upland from which to draw the sideline. Appellant argues, however, that the sideline should have been drawn in a more westerly direction so as to more equitably apportion the gravel bar between the appellant and the state, principally relying upon the case of *Spath v. Larsen*, 20 Wn.2d 500, 148 P.2d 834 (1944).

In the *Spath* case, this court dealt at length with the problem of dividing tidelands among coterminous owners thereof. That case involved the division of tidelands in a cove, not a headland, but this court there set down several principles to be used as guidelines in future tideland sideline cases. We quoted approvingly from the Massachusetts case of *Commonwealth v. Roxbury*, 9 Gray (75 Mass.) 451, which stated at page 522,

"4th. Where there is no cove or headland, a straight line is to be drawn according to the general course of the shore at high water, and the side lines of the lots extended at right angles with the shore line.

"5th. Around a headland, the lines dividing the flats must diverge towards low water mark." 20 Wn.2d at 515.

At a later point in the opinion, we set forth several general principles, and stated:

Tidelands may be divided between adjoining owners by erecting lines perpendicular to the general course of shore line only in cases where the shore line is straight, or substantially so. *Id.* at 525.

■  It appears clear from the *Spath* case that if the tidelands which are to be divided are situated, as in the present case, on a headland, then the sidelines which divide the tidelands should be drawn divergent from the water boundary of the upland to the outer edge of the tidelands, or to the line of navigability. As previously mentioned, the trial court drew the sideline in issue perpendicular to the meander line (between points C and E on the drawing) which formed the boundary of appellant's upland property. However, it is

evident from the exhibits in evidence that the shoreline and meander lines from points A to C on the diagram are substantially straight. At best, point C, the base point of the sideline in issue, is located slightly into the curve of the headland. The meander line from point C to E on the diagram compensates for the slight curvature of the shoreline at point C. Therefore, the sideline which was drawn perpendicular to this meander line is at an obtuse angle to the generally straight shoreline bordering appellant's tidelands. Appellant was consequently benefited by the fact that the westerly boundary of his tidelands is located on a headland. The trial court by its ruling in establishing the sideline, as disclosed in its written decision, was aware of the *Spath* case, *supra*, and determined that the sideline was in conformity with the principles enunciated in that case. The peculiar geography of this area and the state of the record in the instant case do not lend themselves to a mathematically precise apportionment of the tidelands involved. We therefore hold that the sideline established by the trial court is in substantial compliance with the principles of *Spath v. Larsen, supra,* and that the trial court did not err in its determination of the proper location of appellant's tideland sideline "boundary."

The appellant next contends that the trial court erred by failing to permit the jury to consider the effect on appellant's upland property of its proximity to the sand and gravel bar. Appellant argues that the highest and best use of its upland is as a staging area for removal of sand and gravel from the gravel bar; that the jury should therefore have been permitted to consider the amount of commercially usable material in the state's portion of the gravel bar in order to determine whether the presence of over 1,000,000 cubic yards of such material in that portion of the bar would have an effect upon the market value of appellant's upland property.

We disagree. The commercially usable material referred to belonged to the state and could only be removed by permission of the state. See RCW 79.01.124. Appellant

had no constitutionally protected property rights in the state tidelands. It is not proper to consider, in the evaluation of property in condemnation cases, the possibly enhanced value of the land by reason of its possible use in conjunction with land or rights owned by the condemnor. In *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 97, 98, 104 Pac. 267 (1909), *dismissed without consideration*, 231 U.S. 764 (1913), this court stated:

> Compensation is given for taking or injuriously affecting the property of the landowner. Damages must be predicated upon the property itself, or an incident of the property. When a possible use is dependent upon the acquisition of an interest in property of another, no right of compensation accrues.
>
> . . . .
>
> It follows that respondents cannot be compensated for the loss of a boom site, for they had no boom site to lose. To possess it they must have obtained title to, or permission to use, the property of the state.

The trial court did not err in refusing to instruct the jury regarding the proximity of the state-owned portion of the gravel bar.

The appellant contends the trial court erred in failing to permit its counsel during cross-examination to examine the written report to the state made by the state's expert witness, Sporseen. The appellant argues that it was entitled to examine the report for possible impeachment purposes in the event the report disclosed inconsistencies with Sporseen's testimony.

Respondent argues that the report falls within the exclusionary provisions of Rule of Pleading, Practice and Procedure 26(b), RCW vol. 0, which specifically prohibits requiring production of the conclusions of an expert pending a civil action. We agree. While Rule 26(b) governs pretrial discovery proceedings, it is relevant to the issue posed. In effect, the rule places reports such as the one made by Mr. Sporseen out of the reach of opposing counsel. We fail to see how the start of the actual courtroom trial would cause such reports to be any more available to opposing counsel. Rather, something must occur during the course

of the trial which would warrant the production of the report. In the instant case, nothing relating to the report was opened up on direct examination. Thus, no inquiry in regard thereto was proper on cross-examination.

Counsel for the appellant argues that he was entitled to examine the report because the expert witness took the stand to testify. The appellant is in error. Appellant's counsel was thereby entitled to cross-examine the witness concerning his stated conclusions, but he would not have the right to examine the report since no reference was made thereto on direct examination.

Appellant counsel further argues, however, that the report was offered in evidence and that this gave him the right to examine it. The record discloses that the report was offered only after the appellant had requested inspection of it, and that the offer was conditioned upon no prior examination of the report by the appellant. Appellant objected to this procedure. Such a qualified offer was improper and under these circumstances did not constitute a valid offer of the report in evidence.

The cases cited by appellant in support of its argument are not apposite, since none of them is from a jurisdiction having a similar qualification on its civil discovery rule.

The judgment is affirmed.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.

---

September 14, 1966. Petition for rehearing denied.