[No. 39173.     Department One.     October 13, 1967.]

Chester T. Oden, *Appellant,* v. The City of Seattle, *Respondent.**

*Kenneth O. Welling,* for appellant.

*A. L. Newbould* and *Gordon F. Crandall,* for respondent.

Langenbach, J.†—Pee Wee Investments, Inc. (hereinafter referred to as Pee Wee), owned and subdivided a small tract of land north of Seattle. The city of Seattle had a franchise to furnish water to that area. It had an old 4-inch wooden water main on the south side of 185th Street while the Pee Wee property fronted on the north side of that street. The city had a plan to lay an 8-inch line along the north side of said street as a replacement of the 4-inch line. Pee Wee had plans prepared for water service to its addition which had been approved by the city.

Plaintiff had an oral contract with Pee Wee to install its water system for $2,256. Pee Wee agreed to pay for the pipe and accessories when delivered, and payment for its installation when the work was inspected and approved by the city.

*Reported in 432 P.2d 642.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Work started in June 1963. Pee Wee did not pay for the pipe when delivered as agreed. Nevertheless, plaintiff dug the trench, laid the pipe and accessories, and backfilled the trench, leaving the joints exposed for city inspection, and then quit. He did not dig the trench to connect the new and old water mains. He did not ask the city to pressure-test the pipe or to make an inspection; $50 worth of work remained to finish this particular job.

Plaintiff completed his work in July 1963, and in August filed a lien when payment was not made. The lien was specifically against "6 dwelling houses situated upon the following described land, to-wit: Lots 1 through 6 of Pee Wee Addition to King County King County, Washington . . . [for] Labor $814.40, material $1450." Nothing appeared in the lien that the installation of this water main was involved. The wording of the lien would infer that the work and materials were furnished in these houses rather than laying a water main adjacent to these lots.

Prior to the commencement of this work Pee Wee had deposited $350 with the city to cover costs of connection and inspection of this water main.

In February 1964, the work of backfilling was completed by Pee Wee and thereafter pressure tests and inspection were made. After these tests had been approved the new main was attached to the city water system in April 1964. On March 12, 1964, Pee Wee gave the city its bill of sale to the pipe and accessories.

After plaintiff had filed his lien, mortgage holders on the lots liened against foreclosed their prior mortgages so that plaintiff's lien rights were extinguished. In the meanwhile, Pee Wee officials disappeared and abandoned all interest in the property. During this time the plaintiff was negotiating with these mortgagees in an endeavor to secure payment. When it was discovered that the city claimed title under its bill of sale from Pee Wee, the mortgagees refused to make any payment. Plaintiff then sued the city for taking property without compensation. The city interposed three affirmative defenses: (1) That this was a tort action for

conversion and no claim had been filed with the city; (2) that the relation of plaintiff and Pee Wee was that of seller and purchaser and the sales act applied and title passed upon delivery; (These two defenses were rejected by the trial court.) (3) that this was a fixture case. When the pipe was laid it became part of realty, lost its identity and title passed to the city by the Pee Wee bill of sale. This was the basis for the trial court's decision and is the basis of this appeal.

Two claims of error are made: (1) Finding of fact No. 4 which reads as follows:

> That the oral agreement provided for partial payment when the pipe and other materials were delivered to the site, and full payment when construction of the system was completed; that the agreement did not contain any reservation of title to the watermain in plaintiff until paid, *nor is there any other objective evidence of plaintiff's intention that the watermains and other equipment were to remain personal property*; that plaintiff proceeded to install the watermains and other equipment, and substantially completed said work, but was not paid any sum on said contract; that the joints were left uncovered for inspection but plaintiff did not connect the mains to the City's water system as he had not been paid. (Italics ours.)

Plaintiff conceded that this was a contract for work and labor, and material furnished, but argued that the work had not been completed nor had he surrendered dominion over the same. He had stopped work because of a failure of payment.

Plaintiff testified that at the time he constructed the water main it was his intention that it should be connected with the city water main after he had consented to its inspection. Yet there was no agreement that the city water department should make any payment and no claim for payment was filed with the city. During the period of negotiations for payment by the mortgagees he informed the city he had an agreement for settlement so that the city might go ahead and connect the water mains.

The work was practically completed, only $50 worth of work remained to be done. This had been done by Pee Wee

which delivered its bill of sale to the city. Plaintiff's lien did not in any way refer to the unfinished water main, but was directed specifically against the six houses in this subdivision. There was nothing of record which would in any manner advise the city of a claim against this pipe and accessories. The evidence showed that the city never paid for such installations which were either paid for by the property owners privately or by way of a local improvement district. After such installations had been inspected and approved by the city title thereto passed to the city. The evidence clearly supported this finding and this claim of error is without any merit.

(2) The second claim of error attacked conclusion of law No. 3, which reads:

> That in determining whether or not improvements to land have in legal contemplation become a part of the realty in which they were annexed, the intention of the parties is one of the dominant factors to be considered. That when the watermains and related equipment were annexed to the land by plaintiff pursuant to his contract for work, labor and materials, the personal property involved was intended to be a fixture and a part of the realty of Pee Wee Investments, Inc., and title to said personal property therefore passed to Pee Wee Investments, Inc., upon such annexation, although not paid for.

The objection was against that part which stated that when the water main was annexed to the land, the personal property involved was intended to be a fixture and a part of the realty. Plaintiff's contention was that he had not completed the work and had not authorized inspection, nor had he connected the new pipe to the old. Until he so agreed, he had not abandoned his interest in the pipe which still remained a chattel and his personal property. He testified, however, that during his negotiations with the mortgagees he informed the city officials that he had made a settlement and they should proceed with the test and inspection. In addition, his lien was silent as to the pipe and accessories. The city had neither actual nor constructive notice of any claim on his part to this water main.

Plaintiff further admitted that when the pipeline had been installed it was intended to pass to the city as an integral part of its water system. Yet, in the contract negotiation and in the course of installation, he did nothing to secure his interest in the pipe and accessories until he obtained payment. Under these circumstances the trial court determined that the pipe had become fixtures and a part of the realty. In support of this position the court cited *Murray v. Bender*, 125 Fed. 705, 711 (9th Cir. 1903):

> The absence of a previous agreement . . . that the property was to remain the personal chattel of the party making the annexation is evidence of a legal intention that the property was to be regarded as a fixture, which must prevail over the secret intention that the property was to remain separate and removable.

The installation of the pipe and accessories comes within the rule stated in *Parrish v. Southwest Washington Prod. Credit Ass'n*, 41 Wn.2d 586, 589, 250 P.2d 973 (1952);

> In *Forman v. Columbia Theater Co.*, 20 Wn. (2d) 685, 148 P. (2d) 951, this court stated that the true rule relative to fixtures was contained in the following language from *Filley v. Christopher*, 39 Wash. 22, 80 Pac. 834:
>
> " 'The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.' "

The work had been substantially completed by plaintiff; it had been finished by Pee Wee which gave the city its bill of sale. Plaintiff had informed the city to proceed with the inspection and connection. His payment had been expected from either Pee Wee or its mortgagees and never from the city. Consequently, there is no basis, in law or in equity, whereby this became a responsibility or liability of the city.

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and HALE, JJ., concur.