[No. 47218–1. En Banc. October 1, 1981.]

THE STATE OF WASHINGTON, *Petitioner,* v. DONALD M. EVANS, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Joseph B. Loonam* and *Charles F. Secrest, Assistants,* for petitioner.

*Alan A. McDonald* and *Bryan G. Evenson* (of *Halverson, Applegate & McDonald, Inc., P.S.*), for respondents.

[As amended by order of the Supreme Court August 5, 1982.]

DORE, J.—The State appeals from a jury award of $400,000 to respondent Evans and others for condemnation of 17.58 acres from the respondents' 746–acre ranch to be used for the construction of Interstate 82 in the vicinity of Prosser, Washington. The State's primary assignments of errors are that the court (1) failed to grant the State's

motion in limine to exclude testimony as to the value of an adjacent feed mill, (2) erroneously ruled on the admissibility of certain testimony, and (3) erroneously refused one of the State's proposed instructions to the jury. We find prejudicial error, and reverse and remand for a new trial.

I

Prior to trial, the State successfully moved, through a motion in limine, to limit the damage issue as to the value of the property before the taking, minus the market value of the property remaining after the acquisition. The State's chief appraiser, Mellor, testified that the respondents' entire property had a market value of $492,250. According to Mellor, after the taking the respondents would be left with a farm having a market value of $307,786. He testified that Evans was entitled to a just compensation award of $138,750, broken down as follows:

| | |
|---|---|
| (1) Market value of the 17.58 acres | $39,786 |
| (2) Improvements on the 17.58 acres | 57,980 |
| (3) Consequential damages | 13,968 |
| (4) Cure (water truck, 4,000 gallon truck to keep dust down on feedlot) | 27,000 |
| Total just compensation | $138,734 |
| Total just compensation rounded out | $138,750 |

However, the court failed to enforce its valuation order as to respondents. Respondents' appraisers, McMinemee and Golob, were permitted to testify, over objection, as to the replacement value of the two feedlots on the remainder property and nothing else. McMinemee testified that the feedlots were presently worth $450,000 to $500,000 and that, after the taking, the freeway would be within 80 to 100 feet from the north feedlot causing such feedlots to have no value. During cross–examination, McMinemee admitted he was unaware that part of the north feedlot was on land not owned by Evans. Later, McMinemee gave his opinion of market value on the *improvements only* but not on the land underlying the improvements. McMinemee

testified:

Q Did you value the land under that? Under the pens and the feed mill?

A No.

Q You just value improvements?

A The improvements is all.

. . .

A Yes, I'm talking about strictly just the corrals and the scales and the *mill.*

(Italics ours.) The State's motion to strike his testimony was denied.

The respondents' second witness on valuations was Golob, who testified:

Q Well, in other words, did you value the whole? You didn't intend to express an opinion of value of the entire Evans' ownership, did you?

A I was looking at the feedlot, corrals and the mill facility.

Q That's what I thought, and the reason which you found to depreciate them was the proximity of the freeway to the north?

A Right. Yes, this is what I've been following the conversation from, yes.

The trial judge should have stricken the testimony of both McMinemee and Golob. Both were in violation of the court's order that the valuations must be based on the market value of the property before the taking, minus the value of the remainder after the taking, and not on valuations of personal property.

All respondents' appraisal witnesses, McMinemee, Golob and Evans, were permitted to violate the court's order on evaluation, and to testify as to the value of the two feedlots, suggesting by inference that the jury could award the landowner the market value of the two feedlots even though they weren't being condemned. This was prejudicial error.

## II

### The Trial Court Erred in Admitting Market Value Testimony Regarding the Feed Mill

Respondents owned a feed mill which had been used to

serve their feedlots. However, they did not own the underlying property. Paragraph 8 of the State's motion in limine requested the court to exclude any evidence as to land not owned by the respondents in defining the single larger parcel for the purpose of determining just compensation. State counsel, in a supporting memorandum, cited *State ex rel. Wirt v. Superior Court,* 10 Wn.2d 362, 371, 116 P.2d 752 (1941), for the proposition that condemnees are not entitled to recover damages from any tract except the one over which a private way of necessity was condemned.

The damages for taking a right of way are based on ownership of land actually taken and are limited to lands held under the same title.

Other cases support this contention. *State v. Corvallis Sand & Gravel Co.,* 69 Wn.2d 24, 30, 416 P.2d 675 (1966); *Grays Harbor Boom Co. v. Lownsdale,* 54 Wash. 83, 97–98, 102 P. 1041, 104 P. 267 (1909).

The trial judge took this issue under advisement and subsequently ruled that *the value of the feed mill was admissible* and that the State had no standing to raise the ownership issue. The Court of Appeals held that this was prejudicial error because the respondents failed to establish an enforceable interest in the property upon which the feed mill was located. However, it held that the State waived its right to assert an error because it failed to object to testimony concerning the value of the feed mill. This holding is not supported by the record. The testimony shows that the State argued from its initial motion in limine that the State only had to pay for what it was taking and, as they were not taking the feed mill, and as the condemnee had no interest in the land on which the feed mill was located, testimony as to the value of the feed mill was not admissible.

 The reasons for the objection to the introduction of such evidence were clearly elucidated in the affidavit of Pitman and were amply argued in the memorandum brief. The purpose of a motion in limine is to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presen-

tation. Once the State had made its motion in limine, properly legally supported, and the court had taken under advisement an objection to any testimony arising afterwards, the State need not object further. In the absence of a request from the court that evidence, which was the subject matter of the motion in limine, should be objected to as it comes in, the State had a continuing objection to this testimony until the judge ruled on its motion. *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 92, 549 P.2d 483 (1976). The trial court erred in not granting the State's motion in limine in reference to the market value of the feed mill.

Moreover, even if the State had failed to make an objection, there was *no waiver.* No proper question was ever answered *by a witness* in reference to the market value of the feed mill. Opening statements of counsel are not evidence. Hypothetical questions posed, on cross–examination of Mellor, failed to elicit a favorable response, as reflected in the Verbatim Report of Proceedings, at page 364:

Q All right, so if we are talking about X plus a $250,000 mill before under your notion of Y plus the $250,000 mill after the construction, why, X is going to equal Y in any event, isn't it?

A I think there would be some difference, but I don't follow the X and Y's but—

It is clear that respondents' attorney mentioned the $250,000 in reference to a hypothetical question. Mellor didn't agree that the feed mill was worth $250,000; that testimony came exclusively from the lips of respondents' attorney in posing a hypothetical question to which Mellor said, "but I don't follow the X and Y's but . . ."

The second time the value of the feed mill was mentioned was on pages 365 and 366 of the transcript in Mellor's testimony:

Q Well, let's take this example a moment further. The mill added a couple of hundred thousand dollars to the value of this operation and in the market for the cattle yard and the after situation was zilch because of the freeway, then, in addition to what he was losing

because of that result presently he'd be also losing the utility of the mill, wouldn't he, unless he wanted to junk it for salvage?

A Under your premise, but *not what I would agree with.*

Q I'm perfectly comfortable. I've asked you to assume—

A Yes.

Q —the hypothesis that I'm asking you. Just so we're clear, then, that if you'd make that assumption, then, indeed, his damages are greater, are they not?

A *If you make that assumption.*

(Italics ours.) Again counsel refers to a valuation of $200,000 for the feed mill on a hypothetical question, and again Mellor responds he doesn't agree. Again the value comes in through the statement of the attorney which is not testimony. By no stretch of the imagination did Mellor ever testify, agree or infer that the feed mill was worth $200,000 or $250,000.

▊ The testimony of landowner Evans on this subject came prior to the court giving the State a continuing objection as to any testimony concerning the market value of the mill. Evans stated:

Q What else goes into setting up a cattle yard? We've heard testimony about a mill. What would it cost— realizing that cost isn't the sole guide—but what would it cost to replace that mill that the jury saw?

A Approximately $250,000.

It is to be noted that Evans spoke of the "cost of replacement" of the feed mill, not the "market value" of the feed mill. This is *not* evidence of *market value,* and cannot constitute a waiver. Even stronger, in order to lay a foundation, landowner Evans introduced a lease he had entered into with Burlington Northern concerning property not involved in this condemnation. Over objection, Evans testified that he always thought that such lease gave him a lessee interest in the land on which the feed mill was built. This was clearly prejudicial error. The State's objection to this exhibit protected the State from any subsequent testimony as to the feed mill, even if this court wished to equate the "replacement cost of the feed mill" with the "market

value of such feed mill". For until Evans established his ownership, or lessee interest in the property on which the feed mill was located, any testimony as to the value of the feed mill was not admissible.

In any event, the State renewed its objection at least once at trial, objected to numerous questions of witnesses concerning it, and moved to strike the appraiser's testimony when it came in over objection. To say the State waived its objection to testimony as to the value of the feed mill is fiction.

Some of the difficulty in resolving the State's motion in limine was caused by the court's ruling that the State did not have standing to raise the issue whether or not respondent had an enforceable interest in the property upon which the feed mill was located and said this was not a title case. In fact, the court not only has the right but the obligation to try questions of title before the question of damages is submitted to the jury. *Tacoma v. Gillespie,* 82 Wash. 487, 144 P. 697 (1914).

■ The preliminary question of whether the condemnee has any legal rights or claims in the property for which he seeks damages must be answered before any damages can be awarded. *Tacoma v. Mason County Power Co.,* 121 Wash. 281, 209 P. 528 (1922); *State ex rel. Horne v. McDonald,* 32 Wn.2d 272, 201 P.2d 723 (1949). The question of title is not collateral to an eminent domain proceeding. Therefore, the court's ruling that the State did not have such standing was erroneous. *State v. J.R. Leasing Co.,* 1 Wn. App. 944, 466 P.2d 185 (1970). In *Chelan Elec. Co. v. Perry,* 148 Wash. 353, 268 P. 1040 (1928), the court held that it was proper to exclude evidence of value of a dock and other structures located on property which did not belong to the condemnee which would be rendered useless by reason of the project involved. In *State ex rel. Wirt v. Superior Court,* 10 Wn.2d 362, 116 P.2d 752 (1941), it was held that damages to property which had been farmed in conjunction with property owned by the condemnee by reason of an oral lease cannot be considered in the con-

demnation proceedings. The State was bound only by record title and was not liable for damages to lands held under oral, unenforceable leases. *See also State v. Corvallis Sand & Gravel Co., supra; Grays Harbor Boom Co. v. Lownsdale, supra.*

As a result of the court's ruling, value testimony concerning the feed mill (which the State was not condemning) was testified to by one of the respondents' attorneys and permitted to go to the jury. The record is clear that the jury's verdict included the value placed upon the feed mill by respondents' witnesses since the verdict is far in excess of the value testimony given by any witness which did not include the feed mill.

## III
### REVERSIBLE ERROR NOT TO INSTRUCT PURSUANT TO WPI 150.11

The trial court committed reversible error by failing to instruct the jury pursuant to WPI 150.11 which provides as follows:

> In arriving at the amount of compensation to be paid the respondents, you should not consider anything which is remote, imaginary, or speculative, even though mentioned or testified to by witnesses. The only elements which you should take into consideration are those which will actually affect the fair market value of the property and which are established by the evidence.

By means of several delayed and erroneous trial rulings, respondents' witnesses refused to testify to the "before and after" value of the property, but did testify as to the "before and after" value of the feedlots. This was in violation of the court's pretrial order and its instructions on value. The court refused to permit the State to prove that the feed mill was located on property owned by the United States government. It also allowed testimony, over objection, that respondents were leasing the property under the north feedlot, which lease was filed after the State's lis pendens became a matter of record on the Evans property. All of these rulings, individually and collectively, created

great confusion and necessarily required the jurors to speculate as to the meaning of the court's instructions on the measure of damages. On this record, the evidence cried out for instruction WPI 150.11 as a guideline for the jury to eliminate speculation on damages. It was reversible error not to give such instruction.

## IV

Judge Roe, dissenting in the Court of Appeals, concluded:

> After having carefully read the entire record, I come to an inescapable and abiding conclusion that it was the original purpose of the defendants and their very capable lawyer to *include both the value of the feed mill and its enhancing operation in the award* and that *actually it was included.* This is reversible error.

(Italics ours.) *State v. Evans,* 26 Wn. App. 251, 275, 612 P.2d 442 (1980).

We agree. To compound that error, landowner Evans was awarded the market value of the feedlots, although he still possesses them. Evans testified that he owned two feedlots, of equal size, each located on approximately 20 acres and each containing pens to house and feed 2,500 cattle. One was located approximately one-half mile from the freeway (south feedlot) after the take and one (the north feedlot) was located approximately 100 feet from the freeway after the take. Evans testified that their market value was in the neighborhood of $450,000 to $500,000. It is undisputed that a feedlot located one-half mile from a freeway is not damaged by it; Evans admits that the south feedlot is not affected by the taking. The state appraiser, Mellor, testified that the north feedlot could be cured by the State's buying a water truck to water down the cattle; this would cost $27,000. Evans offered testimony disputing the use of the water truck as a cure. However, he doesn't dispute an effective "cure" would be to simply move the north feedlot some quarter of a mile away (1,320 feet) on the same property by simply removing the pens, which are personal property, to the new location. As the north feedlot is much

smaller than the feed mill, which testimony stated could be moved for $10,000, it could presumably be moved for even a lesser figure.

We conclude that the trial court committed prejudicial error in refusing to grant the State's motion in limine to exclude all testimony concerning the value of the feed mill. We further hold that the State's motion in limine, which was properly buttressed by affidavits and legal memorandums, relieved the State from the need to make individual objections to any testimony which was admitted prior to the trial court's ruling on the motion. We set aside the judgment and remand for a new trial, to be conducted in accordance with the provisions of this opinion.

ROSELLINI, WILLIAMS, and DIMMICK, JJ., and SWAYZE, J. Pro Tem., concur.

UTTER, J. (dissenting)—I find, on this record, that there is no reversible error. By holding otherwise, the majority overturns decades of precedent.

## I

The trial court erred in admitting the feed mill testimony, but its error is not reversible. That testimony, though inadmissible, is inadmissible for reasons not given by the State. By finding reversible error, the majority ignores the long–standing rule that evidentiary reversals require a legally sufficient objection.

The State objected to the feed mill evidence solely because the feed mill is located on leased land.[1] That, however, does not indicate the testimony is inadmissible. Rather, the testimony is inadmissible because the feed mill was not condemned, does not constitute realty, and because its value is not related to the value of the land actually taken.

---

[1] The motion in limine simply asked for the exclusion of "[a]ny evidence or opinion which includes any lands not owned by the respondents in defining the single larger parcel for the purpose of determining just compensation in this action." That was also the only objection made at trial.

Our prior cases hold that evidentiary objections must have enough specificity to apprise both the court and the adversary of the claimed error. *State v. Thacker,* 94 Wn.2d 276, 282, 616 P.2d 655 (1980); *State v. Boast,* 87 Wn.2d 447, 451, 553 P.2d 1322 (1976). The grounds for the objection must be presented "so that the judge may understand the question raised and the adversary may be afforded an opportunity to remedy the claimed defect.'" *Boast,* at 451, quoting *Presnell v. Safeway Stores, Inc.,* 60 Wn.2d 671, 675, 374 P.2d 939 (1962).

> When an objection is so indefinite as not to call the court's attention to the *real reason* for the testimony's inadmissibility, error may not be based upon the overruling of the objection.

(Italics mine.) *Boast,* at 451, quoting *Kull v. Department of Labor & Indus.,* 21 Wn.2d 672, 682–83, 152 P.2d 961 (1944). *Accord, Coleman v. Montgomery,* 19 Wash. 610, 53 P. 1102 (1898).

As for a motion in limine, the same requirements apply. In *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85. 91, 549 P.2d 483 (1976), we stated:

> [T]he trial court should grant such a motion if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn or which may develop during the trial . . . To enable the court to make such a determination prior to trial and "out of context" the moving party should provide a memorandum of authorities showing that the evidence is inadmissible. If the court does not have the benefit of legal arguments, it can hardly be said to have abused its discretion if it denies a motion asking it to rule on the admissibility of evidence before it knows what the issues and circumstances are.

In this case, both the motion in limine and the trial objections technically conformed to the above requirements. The challenged evidence was unambiguously identified and reasons as well as authority were provided. The problem, however, is that the reasons and cited authority

do not render the evidence inadmissible.

The feed mill is relevant to the compensation award only if it enhances the value of the land taken or is a compensable item itself. *Bradley v. State,* 73 Wn.2d 914, 442 P.2d 1009 (1968); *North Coast R.R. v. Kraft Co.,* 63 Wash. 250, 115 P. 97 (1911); *State ex rel. State Highway Comm'n v. Gray,* 81 N.M. 399, 467 P.2d 725 (1970); *United States v. Jaramillo,* 190 F.2d 300 (10th Cir. 1951). As correctly noted by the Court of Appeals, the value of the feed mill is not relevant to the former determination, for what the mill is worth does not tend to prove the degree to which its presence enhances the value of the land taken. *See State v. Demos,* 94 Wn.2d 733, 619 P.2d 968 (1980). Evidence is relevant only if it tends to prove a fact or theory to be established. *Demos, supra; Ladley v. St. Paul Fire & Marine Ins. Co.,* 73 Wn.2d 928, 934, 442 P.2d 983 (1968). Since the State did not object on these grounds, it cannot now assert that error. *Boast, supra; Bolster v. Stocks,* 13 Wash. 460, 43 P. 532 (1896).

The State's only objection was that the leasehold made the mill noncompensable. But, unless the leased land or the mill was actually condemned, the fact that the mill is on leased land is completely irrelevant. As already stated, the mill is compensable only if the State deprives its owner of its use or possession. Short of that, it makes no difference where the mill is located, except insofar as its location augments the value of the land actually taken.

In this case, the mill was not technically condemned. The owner retains its use and possession. And if it were constructively condemned (in that it will become valueless after the feedlots are taken), it is still noncompensable because it constitutes personal property.[2] Personal prop-

---

[2] Under existing Washington law, the feed mill is personal property. An item is a compensable fixture, rather than personalty, when (1) actually annexed to the realty, (2) applied to the use or purpose to which that part of the realty with which it is connected is appropriated, and (3) the party making the annexation intends it to be a permanent accession to the freehold. *Oden v. Seattle,* 72 Wn.2d 221, 432 P.2d 642 (1967); *Filley v. Christopher,* 39 Wash. 22, 80 P. 834 (1905).

erty is not compensable, for condemnation awards cover only land, buildings, and fixtures. *Bradley v. State, supra; North Coast R.R. v. Kraft Co., supra.*

Hence, the leasehold objection was completely beside the point. "Leasehold" is not a talismanic word. For some reason, though, the majority fails to realize that. Consequently, after today, virtually any evidentiary objection will preserve the error.

I therefore believe that the State, inasmuch as it failed to make an adequate objection, is not entitled to a reversal.

## II

The majority contends, without citing any authority, that it was reversible error to permit testimony as to the "before and after" values of only a portion of the entire tract.

The proper measure of compensation is the difference between the "before and after" fair market values of the entire tract. *Idaho & W. Ry. v. Coey,* 73 Wash. 291, 131 P. 810 (1913); *State v. Sherrill,* 13 Wn. App. 250, 534 P.2d 598, *review denied,* 86 Wn.2d 1002 (1975). Despite that, we have repeatedly stated that if there is some competent evidence which permits the application of the proper rule, it is not reversible to introduce evidence as to the value of separate tracts. *Coey,* at 295; *In re Mercer Street, Seattle,* 55 Wash. 116, 104 P. 133 (1909). The majority, however, totally fails to acknowledge this.

In this case, the State introduced evidence from several witnesses as to the "before and after" values for the entire tract, and one of the condemnees testified as to the before

---

The respondents lacked the requisite intent to make this feed mill a fixture. The feed mill, alleged to be worth $250,000, is located on a leasehold which "either party may terminate . . . at any time upon giving the other party not less than thirty (30) days written notice of such termination . . ." (Exhibit 9, item 13). And upon termination of the lease any "structures and property [belonging to the lessee and not removed] shall become the property of Lessor . . ." (Exhibit 9, item 14). Moreover, the respondents admitted that the mill is personalty. The value of the mill, the inexpensiveness of moving it, and the terminable nature of the lease indicate the respondents neither intended to make the mill a permanent accession to the land nor considered it anything other than personal property.

value of the whole property and how the condemnation would affect it. He testified:

Q . . . I have to ask you in the before situation what do you think that your place is worth?
A Are you talking about the feed lot or the whole?
Q No, the whole thing. . . .
A Well, I believe the whole Evans' Brothers holdings in this particular mapping arrangement here is probably worth a million to a million, two.

. . .

Q . . . [W]hat do you think your property, again, all of it, will be worth afterwards, after the highway is built?
A Well, I think it will be diminished by the worth of the feed lot, and it is anything connected directly with the feed lot.
Q All right, and how much in dollars? . . .
A . . . I think that feed lot is worth $450,000 right now.

. . .

Q And what will it be worth after this freeway goes through in your opinion, Don?
A I don't believe we'll have a feed lot.
Q . . . Do you feel that it will have any market value? Do you think any willing buyer informed who is not compelled to buy would be interested in buying that feed lot?
A No, sir.

Verbatim Report of Proceedings, at 464–65. Also, the jury was properly instructed as to the rule to apply.[3] Since the jury was properly instructed, and given that all the essential figures were presented, the error is not reversible. By concluding otherwise, the majority acts in disregard of our prior cases.

### III

The majority additionally concludes that it was reversible error not to give WPI 150.11. Interestingly, the failure to use that instruction has never until this case constituted

---

[3]Instruction No. 8 provides in pertinent part:

"'Just compensation' is the difference between the fair market value of the entire property before the acquisition and the fair market value of the remainder after the acquisition measured as of the date of the trial."

error. *State v. Williams,* 68 Wn.2d 946, 416 P.2d 350 (1966); *Renton v. Scott Pac. Terminal, Inc.,* 9 Wn. App. 364, 512 P.2d 1137 (1973). Yet, the majority believes, again without citing any authority, that the confused record required it. A confused record, however, has never been the test for erroneous instructions. Instead, the test has been whether the given instructions, when read as a whole, were prejudicial. *Id.*

While none of the instructions in this case even mention speculative damages, the court did instruct the jury to award compensation only for the difference between the "before and after" fair market values. See instruction No. 8. And it defined "fair market value" as

the amount in cash which a well–informed buyer, willing but not obliged to buy the property, would pay, and which a well–informed seller, willing but not obligated to sell it, would accept, taking into consideration all uses to which the property is adapted and might *in reason* be applied.

(Italics mine.) Instruction No. 9.

I do not believe a "well–informed buyer" would consider speculative or remote damages. Moreover, the instruction implies that only reasonable effects should be recognized. Consequently, the absence of WPI 150.11, in light of the other instructions, was not prejudicial. That has been our result before and this record does not require otherwise.

For these reasons, I dissent.[4]

BRACHTENBACH, C.J., and STAFFORD and DOLLIVER, JJ., concur with UTTER, J.

Reconsideration denied December 17, 1981.

---

[4]As to the other issues raised by the parties, but not discussed by the majority, I find no reversible error.