

FILED
COURT OF APPEALS
STATE OF WASHINGTON

2016 APR 18 AM 12: 30

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,     )
           )   DIVISION ONE
     Respondent,   )
           )   No. 73205-6-I
     v.        )
           )   UNPUBLISHED OPINION
JOSHUA TAUTUA TANOAI,    )
           )
     Appellant.    )   FILED: April 18, 2016
           )

DWYER, J. — Following a jury trial, Joshua Tanoai was convicted of unlawful possession of a firearm in the first degree and assault in the second degree while armed with a firearm. The jury was unable to reach a verdict on a robbery in the first degree charge. On appeal, Tanoai contends that the trial court erred by admitting evidence of his secreting himself from the police. Finding no error, we affirm.

I

The charges herein arose from the theft of Laurene Boushee's Subaru station wagon on November 20, 2013 in Lynnwood.[1]

At trial, Boushee testified that on November 19, 2013 she loaned her Subaru station wagon to Tanoai and his girlfriend, Tia Vaughn. Later that day,

---

[1] The robbery and assault charges additionally alleged that Tanoai was armed with a firearm when he committed the crimes. All three charges also alleged that Tanoai was on community custody at the time of the crimes.

she received a message from Tanoai stating that he refused to return her car because of an outstanding $600 debt.

On November 20, Boushee got a ride to Tanoai's residence in Lynnwood. She saw her car in the yard under a large tarp, blocked in by another vehicle. When she knocked on the door, Vaughn's brother, Jeff Vaughn, answered the door whereupon Tanoai "answered the door with a shotgun." A yelling match ensued. Boushee testified that Tanoai pointed the shotgun at her as she backed away from the house, at which time Tanoai turned and shot at the car, blowing out a side window and putting several bullet holes in the car exterior. Tanoai then went inside the house, came back without the shotgun, moved the car that was blocking Boushee's Subaru, and started the engine of Boushee's vehicle.

In an attempt to prevent Tanoai from driving away, Boushee jumped onto the hood of her car but Tanoai "floored it" and drove down the street with Boushee holding onto the hood. After driving a distance of approximately two houses, Boushee threw herself from the car, landed on the ground, and was injured. During this incident, Boushee was on the telephone with a 911 operator. A recording of the 911 call was played to the jury without objection.[2]

Police were dispatched to the scene where they spoke with Boushee. She quickly identified Tanoai from a six person photomontage as the perpetrator. Police then examined the yard and located a large black tarp, broken auto glass, shotgun shell casings, and green paint chips. Through interviews with Boushee

---

[2] It was edited to remove certain comments made by Tia Vaughn that could be heard in the background.

and residents of the house, police officers learned that Tanoai and Tia Vaughn occupied the downstairs bedroom of the house. After obtaining a search warrant, officers found a loaded 12-gauge shotgun under a mattress in the downstairs bedroom, a fired shotgun shell casing in the chamber, four unfired rounds in the loading tube, and ammunition. Additionally, officers uncovered a .22 caliber rifle, a casino club card in Tanoai's name, Washington ID cards for Tanoai and Tia Vaughn, and maintenance records for Boushee's Subaru.

The next day, Boushee's Subaru was located in Marysville with broken windows and bullet holes in the driver's side door. It had been abandoned in the yard of a house that was under construction; the construction crew had called the police.

At trial, Snohomish County Deputy Sheriff Ryan Phillips testified that he was tasked with locating Tanoai during late 2013 and early 2014. Deputy Phillips stated that, as of December 27, 2013, Tanoai had not yet been located and that "[h]e had some felony warrants and was wanted on multiple probable cause charges." As of that date, Deputy Phillips had been looking for Tanoai for several weeks so he went to see if Tia Vaughn "had any information or leads that could direct [his] unit to where [Tanoai] may be hiding at." Deputy Phillips's testimony proceeded without any objection from defense counsel, and no cross-examination was conducted.

Additionally, Deputy Marcus Dill testified that he was assigned to the United States Marshal's Fugitive Task Force and that from late 2013 to early 2014 his team was attempting to locate Tanoai as part of an ongoing

investigation. Deputy Dill testified that he located Tanoai on January 7, 2014 in Lynnwood at the house where the shooting occurred and that on initial contact Tanoai was "[i]n the ceiling of the residence." Deputy Dill clarified that Tanoai had "crawled up into the crawl space and was in the rafters." Tanoai was then taken into custody. Deputy Dill's testimony likewise proceeded without any objection and defense counsel conducted no cross-examination.

Tanoai presented an alibi defense. Tanoai's mother, Lorri Stohl, testified that she and her daughter, Manaia Munoz, picked up Tanoai in Marysville on November 19, the day before the shooting occurred. Stohl, however, acknowledged that she was initially unsure about the date on which this occurred. Stohl further testified that Tanoai spent the next several days at Stohl's house on Camano Island preparing for Thanksgiving, and that she drove him back to Marysville on November 22 or 23. Munoz also testified that she was with Stohl on November 19 when they retrieved Tanoai in Marysville. However, Munoz likewise conceded that in her pretrial interview she claimed that the two had picked up Tanoai on November 20 or 21.

Prior to trial, Tanoai moved in limine to exclude any reference to his arrest or other wrongful conduct pursuant to ER 404(b). The trial court granted Tanoai's motion insofar as it was intended to exclude reference to warrants and arrests unrelated to the charged offenses. With regard to Tanoai's arrest for the charges at issue herein, the prosecutor opposed the motion, stating that the State "intend[ed] to offer testimony of when and where the defendant was arrested" because it was relevant evidence and spoke to Tanoai's consciousness

-4-

of guilt. Tanoai's counsel responded that the arrest occurred weeks after the commission of the crime and that if Tanoai had, in fact, been hiding in the attic crawl space to avoid arrest, there was no evidence demonstrating that he was hiding because of the warrant issued as a result of the particular incident at issue herein.

The trial court denied Tanoai's motion in limine, stating that "[t]he fact that the defendant was hiding in an attic, if, in fact, the State can prove that, when the police came to arrest him on this charge, is certainly relevant evidence." Moreover, the trial court indicated that it was unaware of any constitutional or statutory limitation on the admissibility of this type of flight evidence and that the probative value was not substantially outweighed by undue prejudice to Tanoai.[3]

The jury convicted Tanoai of unlawful possession of a firearm in the first degree and assault in the second degree, but could not reach a verdict on the robbery in the first degree charge. The trial court sentenced Tanoai to 152 months of incarceration, imposing concurrent high-end standard range terms for all three counts plus a 36 month firearm enhancement. Tanoai now appeals.

II

Tanoai contends that the trial court erred by admitting evidence that he was hiding in the ceiling crawl space when arrested. This is so, he asserts, both

---

[3] "The purpose of a motion in limine is to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presentation." State v. Evans, 96 Wn.2d 119, 123, 634 P.2d 845, 649 P.2d 633 (1981). Thus, "[u]nless the trial court indicates further objections are required when making its ruling, its decision is final, and the party losing the motion in limine has a standing objection." State v. Kelly, 102 Wn.2d 188, 193, 685 P.2d 564 (1984). Because the trial court did not indicate further objections were required, Tanoai had a standing objection to the testimony.

because the arrest occurred several weeks after the commission of the crime and because he was sought pursuant to multiple felony warrants at the time of the arrest, not limited to the charged offense. We disagree.

"Under ER 404(b) evidence of other crimes, wrongs, or acts is presumptively inadmissible to prove character and show action in conformity therewith." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995) (citing ER 404(b); Carson v. Fine, 123 Wn.2d 206, 221, 867 P.2d 610 (1994)). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). We review a trial court's ruling under ER 404(b) "solely for abuse of discretion." State v. Freeburg, 105 Wn. App. 492, 497, 20 P.3d 984 (2001) (citing State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995)). An abuse of discretion occurs "only where the decision of the trial court was manifestly unreasonable or based on untenable grounds." Freeburg, 105 Wn. App. at 497 (citing Powell, 126 Wn.2d at 258).

"Admissibility of evidence under ER 404(b) requires a three-part analysis." Freeburg, 105 Wn. App. at 497. First, "[t]he court must identify the purpose for which the evidence will be admitted." Freeburg, 105 Wn. App. at 497 (citing State v. Saltarelli, 98 Wn.2d 358, 362-66, 655 P.2d 697 (1982)). Second, the evidence sought to be admitted must be "materially relevant to that purpose." Freeburg, 105 Wn. App. at 497 (citing Saltarelli, 98 Wn.2d at 362-66). Third, "the court must balance the probative value of the evidence against any unfair

-6-

prejudicial effect the evidence may have upon the fact finder." Freeburg, 105 Wn. App. at 497 (citing Saltarelli, 98 Wn.2d at 362-66).

As a general rule, "evidence of the flight of a person, following the commission of a crime, is admissible and may be considered by the jury as a circumstance, along with other circumstances of the case, in determining guilt or innocence." State v. Bruton, 66 Wn.2d 111, 112, 401 P.2d 340 (1965). Evidence of flight is admissible when it creates "'a reasonable and substantive inference that defendant's departure from the scene was an instinctive or impulsive reaction to a consciousness of guilt or was a deliberate effort to evade arrest and prosecution.'" Freeburg, 105 Wn. App. at 497 (quoting State v. Nichols, 5 Wn. App. 657, 660, 491 P.2d 677 (1971)). Washington law "does not define what circumstances constitute flight, so 'evidence of resistance to arrest, concealment, assumption of a false name, and related conduct are admissible' if the trier of fact can reasonably infer the defendant's consciousness of guilt of the charged crime." State v. McDaniel, 155 Wn. App. 829, 854, 230 P.3d 245 (2010) (quoting Freeburg, 105 Wn. App. at 497-98).

Typically, evidence of flight "tends to be only marginally probative as to the ultimate issue of guilt or innocence." Freeburg, 105 Wn. App. at 498. Consequently, "the circumstance or inference of flight must be substantial and real. It may not be speculative, conjectural, or fanciful." Bruton, 66 Wn.2d at 112. "Pyramiding vague inference upon vague inference will not supplant the absence of basic facts or circumstances from which the essential inference of an actual flight must be drawn." Bruton, 66 Wn.2d at 113.

"[T]he probative value of evidence of flight as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."

McDaniel, 155 Wn. App. at 854 (alteration in original) (quoting Freeburg, 105 Wn. App. at 498).

Here, the trial court appropriately identified (1) the purpose for which the evidence would be admitted, (2) that the evidence was materially relevant to that purpose, and (3) that the probative value outweighed unfair prejudicial effect. See Freeburg, 105 Wn. App. at 497. The trial court indicated that evidence that Tanoai was found hiding in a ceiling crawl space when arrested was "certainly relevant evidence" as it spoke to Tanoai's consciousness of guilt. The trial court specifically read through ER 401, ER 402, and ER 403 in the presence of the parties, and found that the probative value was not substantially outweighed by the danger of unfair prejudice. Thus, the trial court's inquiry was procedurally proper pursuant to ER 404(b). See Freeburg, 105 Wn. App. at 497.

The trial court's substantive inquiry as to the admissibility of the flight evidence was likewise proper. Pursuant to the four factors listed in McDaniel, an inference that the jury could draw from Deputy Dill's testimony was that Tanoai's behavior amounted to "flight." When police came to the Lynnwood house, Tanoai was hiding in a ceiling crawl space in an attempt to conceal himself from police and evade arrest. Concealment and related conduct can amount to flight. See McDaniel, 155 Wn. App. at 854.

Relatedly, Tanoai's concealment from officers "reasonably could be considered a deliberate effort to evade arrest and prosecution," and, thus, was probative of his consciousness of guilt. State v. Hebert, 33 Wn. App. 512, 515, 656 P.2d 1106 (1982). When officers came to the Lynnwood house, where the shooting had occurred, Tanoai was found "[i]n the ceiling of the residence," essentially hiding.[4] Tanoai offered no alternative reason for concealing himself from officers when they came to arrest him. It was reasonable for the jury to infer that Tanoai knew that there were outstanding warrants for his arrest, and that this final effort to evade officers could reasonably be attributed to his consciousness of guilt.

The State has also satisfactorily demonstrated that Tanoai's consciousness of guilt related to the charged crimes at issue herein. Tanoai takes issue with this inference, however, contending that he was wanted on multiple warrants, including those for unrelated offenses, when he was arrested 48 days after the shooting occurred. However, the trial court granted Tanoai's motion in limine to exclude any reference to unrelated warrants and uncharged crimes. Although Deputy Phillips testified that, as of December 27, 2013, Tanoai had not been located for "some felony warrants and was wanted on multiple probable cause charges," this testimony drew no objection from defense counsel,

---

[4] Q Okay. Where was Mr. Tanoai found?
A In the ceiling of the residence.
Q What do you mean by the "ceiling"?
A He'd, on initial contact, he had crawled up into the crawl space and was in the rafters, essentially.
Q Kind of a hiding spot?
A You could call it that, yes.
Q Was he then taken into custody?
A He was.

-9-

nor is it challenged on appeal. Accordingly, the admission of Deputy Phillips's testimony is not the proper subject of appellate review.[5]

Moreover, contrary to Tanoai's present assertions, the record indicates that the only reason deputies were searching for Tanoai at the time of his arrest was in relation to the November 20 incident at issue herein. Deputy Dill testified that the task force was looking to arrest Tanoai in connection with an ongoing investigation into "a robbery-assault incident that occurred in the Lynnwood area back in November of 2013." Thus, a reasonable inference for the jury to make was that Tanoai's concealment was related to the warrant and charged crimes at issue herein. To the extent that Tanoai's motivation to conceal himself arose from unrelated warrants or uncharged crimes, it was for the jury to determine whether to draw the inference urged by the State.[6]

Considering the entirety of the circumstances in this case, the jury could have reasonably inferred that Tanoai's concealment demonstrated his consciousness of guilt of the charged crimes and, thus, supported an inference of

---

[5] The Washington Supreme Court has held that,
even when the trial court has already excluded evidence through a pretrial order, the complaining party should object to the admission of the allegedly inadmissible evidence in order to preserve the issue for review, unless an unusual circumstance exists "that makes it impossible to avoid the prejudicial impact of evidence that had previously been ruled inadmissible." [State v.] Sullivan, 69 Wn. App. [167, ]173[, 847 P.2d 953 (1992)]. Examples of such unusual circumstances are when the other party's questions were "in deliberate disregard of the trial court's ruling," or "an objection by itself would be so damaging as to be immune from any admonition or curative instruction by the trial court." Id.
State v. Weber, 159 Wn.2d 252, 272, 149 P.3d 646 (2006). Tanoai has not appealed the admission of Deputy Phillips's testimony nor argued that unusual circumstances exist that make the testimony subject to appellate review.

[6] Tanoai's tactical decision to, as much as possible, keep from the jury evidence of the other circumstances that he claims may have caused him to hide from the police is a decision that he must own. His election of that strategy does not diminish the materiality of the flight evidence.

guilt. Consequently, the trial court did not abuse its discretion in admitting evidence of Tanoai's concealment and arrest.

Affirmed.

We concur: