[No. 15005.   Department One.   January 6, 1919.]

## THE STATE OF WASHINGTON, *Respondent,* v. GIULIO ARGENTIERI, *Appellant.*[1]

WITNESSES (78) — CROSS-EXAMINATION — SCOPE — LIMITATION TO DIRECT. In a prosecution for rape of a girl under age, a witness testifying as to a conversation he had with the defendant about the girl, may not be cross-examined relative to conduct between the defendant and girl for the two years prior to the offense.

SAME (63)—EXAMINATION BY COURT. Error cannot be predicated upon questions propounded by the trial court in efforts to assist a witness who had difficulty in understanding English, where no partiality was shown and no prejudice resulted.

SAME (107)—EXAMINATION OF CHARACTER WITNESS. In the examination of a character witness offered by one accused of rape, it is proper for the court to enforce the rule that the witness answer yes or no to the question as to knowledge of reputation, without reference to business reputation, and if the witness answers no, the inquiry is ended; general reputation for good morals, not possible delinquencies, being the proper inquiry.

CRIMINAL LAW (193) — CONTINUANCE — APPLICATION. A continuance of a criminal case to secure the testimony of a nonresident witness is properly refused where it was not shown that it could be obtained in a reasonable time.

CRIMINAL LAW (356)—NEW TRIAL—NEWLY DISCOVERED EVIDENCE —DELAY. It is not error to deny a new trial to secure the evidence of a nonresident witness whose address was known before the trial, where no showing was made that he would testify if a new trial were granted.

Appeal from a judgment of the superior court for King county, Tallman, J., entered February 8, 1918, upon a trial and conviction of rape. Affirmed.

[1]Reported in 177 Pac. 690.

*E. F. Kienstra,* for appellant.

*Alfred H. Lundin* and *John D. Carmody,* for respondent.

MITCHELL, J.—Defendant was convicted of the crime of statutory rape, committed upon the person of a girl thirteen years of age. A motion for a new trial was denied. From a judgment and sentence, defendant appeals.

The state called a witness who, in direct examination, testified only concerning conversations he had with the defendant about the girl. Upon cross-examination he was asked relative to conduct between the defendant and the girl for the last two years prior to the offense charged. An objection to this as improper cross-examination was properly sustained.

Further, in the cross-examination just referred to, the judge asked the witness a question or two, which conduct is claimed to be prejudicial. The witness is an Italian and had difficulty in understanding and speaking English. The necessity for an interpreter had been considered, and the witness had already several times expressed a wish for one, but all other parties were content to proceed without one. The witness spoke in a low tone of voice. Counsel on each side, at times, alternately and informally asked questions in efforts to assist the witness, who evidently was troubled to find the proper English to express what the defendant had said to him in Italian. In this situation, the court asked one or two questions in the same spirit, for the same purpose, and apparently in a proper manner, eliciting from the witness nothing, however, different from what he had already testified to, and immediately the prosecuting attorney, without any objection, had the witness use an Italian word to express his idea. The circumstance exhibits

no partiality on the part of the trial judge, and while one, if aggrieved at any improper conduct of the court in the examination of a witness before a jury, need not necessarily object or take exception thereto in order to claim error upon it, nevertheless it is noticeable that counsel for defendant, rather faithful in making objections and taking exceptions in the trial of this case, seemed to have found no fault with the court's action at the time, evidently treating it the same as we view it, of small moment and without prejudice.

It is claimed there was error in remarks and rulings of the court in the taking of the evidence of J. A. Cathcart, a character witness for the defendant. After the witness testified that he had had occasion to investigate the defendant's character during the last three years, the following occurred:

"Mr. Fullen (for defendant): Question: Are you acquainted with his reputation as to general moral character? The Court: Answer that yes or no. It is not in a business way we are inquiring now. Answer: I think I would have to say no. Mr. Fullen: Exceptions to the court's remarks. The Court: The jury will disregard the court's remarks. I was talking to counsel and not to the jury. Mr. Fullen: Exceptions to the court interfering with the witness, and with the examination of the witness. Mr. Fullen: Question: Are you acquainted with his general reputation as to moral character in this community? The Court: Answer that yes or no. Answer: Well, Judge, I don't know what he means; if you mean in a business way. The Court: He doesn't mean in a business way. Answer: No. Mr. Fullen: Exceptions to the court's remark. It does mean in a business way. The Court: The record shows that you have challenged the court's remarks; that is sufficient; proceed. Mr. Fullen: The court has eliminated the business proposition. General moral character is made up of everything, including business. Mr. Fullen: Question: Are you acquainted with his general reputation

as to morality, which includes business? The Court: Answer yes or no. Mr. Fullen: Exceptions. Answer: I think I would have to say no in accordance with the court's remarks. If I was acquainted with his private life I would not hesitate, but I am not in this case. I have only known him as I have come in contact with him. As far as my investigation went as to his business standing, as to relations I had with him, he stood very high.''

The court, in the case of *State v. Surry*, 23 Wash. 655, 63 Pac. 557, has declared the rule to be:

"It is a general rule in criminal cases that evidence of the character of the accused, when offered by him, is relevant and therefore admissible. But the character or reputation he is entitled to prove must always be such as would make it unlikely that he would commit the particular offense with which he is charged."

To the same effect, *State v. Schuman*, 89 Wash. 9, 153 Pac. 1084, Ann. Cas. 1918A 633; 1 Wharton's Criminal Evidence (10th ed.), p. 181, § 59.

The orderly and proper way to put in evidence of this sort, after the witness has testified to acquaintanceship with the defendant not too remote in point of time, is to have the witness answer no or yes, as the fact is, to the question, if he knows what the general reputation of the defendant is, in the community in which he resides, for the particular trait of character (naming it) that is relevant to and involved in the crime with which the defendant is charged. If the witness answer no, that ends the inquiry. If he answer yes, then the next and final question should be, What is it, good or bad? It is to be noticed the trial court only attempted to enforce respect for these rules. The defendant, however, finally had his way, as is disclosed by the last question and answer. Thereafter the court properly sustained an objection to the materiality of a question by defendant's counsel to

this witness, as follows: ''Did you ever notice any lapse from any of the elements of morality in all your acquaintanceship?'' General reputation for good morals, and not possible delinquencies or lack of them, within the knowledge of the witness, was the proper inquiry.

In the cross-examination of the prosecutrix and her mother, defendant's counsel asked each if, about five years prior to the alleged offense, the girl had not been taken to Dr. Chessman, in Seattle, for examination, on the representation that the child had been raped. Each answered in the negative. At the close of the state's case, defendant asked for a continuance, claiming surprise at such denials of the witnesses, and stated that no attempt had been made to get Dr. Chessman, now a resident of Chicago, Illinois, to testify, because he relied on the belief that the state's witnesses would admit the incident referred to. Not being able to say Dr. Chessman could be had in a reasonable time to testify in the case, the court properly denied the application for a continuance.

This same matter of Dr. Chessman's testimony was urged on the motion for a new trial. It appears that this case had been set for trial once before, at a date about one month earlier than the date on which it was tried, and there is a showing that defendant knew of Dr. Chessman and his address in Chicago in sufficient time to have at least made an application for a further continuance before the trial actually commenced, in order to obtain Dr. Chessman as a witness. No such application was made. Besides, at the time of presenting the motion for a new trial, there was no showing or indication that Dr. Chessman could or would be obtained as a witness if a new trial were granted. There was no error in refusing a continu-

ance of the trial, nor in denying the motion for a new trial on this ground. *State v. Beeman,* 51 Wash. 557, 99 Pac. 756.

Objection is made to evidence of a confession by defendant, the claim being that it was not free and voluntary. Counsel's argument in this respect is general only. The record convinces us that the state responded to the burden imposed and established the fact that the confession was free and voluntary.

Finally, it is argued the court erred in denying the motion for a new trial. Our attention has been called to nothing in support of this assignment other than what has already been noticed. The proof was ample to satisfy the jury of the guilt of the defendant, and the judgment is affirmed.

MAIN, C. J., CHADWICK, TOLMAN, and MACKINTOSH, JJ., concur.