[No. 10452–7–I.  Division One.  December 30, 1982.]

The State of Washington, *Respondent*, v. Ivy
Gail Kelly, *Appellant*.

542

*John Henry Browne,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *Vickie Norris, Deputy,* for respondent.

WILLIAMS, J.—The defendant, Ivy Gail Kelly, was found guilty by jury verdict of murder in the second degree and sentenced to a maximum term of 20 years in prison. She appeals from the judgment. We affirm.

On August 30, 1980, at their home in Snohomish County, Kelly killed her husband with one gunshot. Her defense was that when her husband, who had been drinking and was angry with her, blocked her only exit from the house, she believed he intended to kill her and pointed a pistol at him intending to scare him. The gun discharged.

In support of this defense, Kelly testified in detail of extensive previous physical abuse at the hands of her husband and of his repeated threats to kill her immediately before she fired the shot. She also called a recognized expert in the field of battered women who testified that the

decedent fit the classic behavioral model of a batterer and that Kelly was a victim of the "battered woman syndrome."

The evidence in support of the "battered woman syndrome" was that the decedent had verbally and physically abused Kelly to the point that, because of her love for him and wish that the marriage would last, she developed a state of "learned helplessness." Then when the decedent, with glassy eyes and slurred speech, typical of previous assaults, said he was going to kill her and blocked her only exit, she feared for her life, picked up the gun and shot him. The expert witness testified that the "battered woman syndrome" arises from a situation in which a man physically and psychologically abuses a wife or loved one, gains her forgiveness, seeks her love and reconciliation and then repeats the cycle over and over so many times that the woman, at all times hoping the relationship will last, is reduced to a state of learned helplessness.

The first question concerns the State's rebuttal evidence that about a month before the shooting, Kelly had accused a neighbor engaged in cleaning an easement between their properties of trespass and had threatened him with great bodily harm and on another occasion had pounded on the house and the decedent's car with a shovel when he had locked her out. Kelly argues that the evidence was improperly admitted because it went to her character and her character was not in issue. She also argues, relying upon *State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963) and *State v. Putzell,* 40 Wn.2d 174, 242 P.2d 180 (1952), that the State could not properly introduce specific act evidence to be brought on nonessential or collateral issues.

■■ The State's rebuttal evidence bears upon Kelly's contention that she was a "battered woman." Neither at trial nor in her brief has Kelly specifically connected the "battered woman syndrome" with justification for the killing of her husband. The phenomenon undoubtedly exists with many tragic consequences. Whether one of the consequences is the slaying of the husband depends upon the facts and circumstances of the case. The existence of the

syndrome in a marriage does not of itself establish the legal right of the wife to kill the husband; the evidence must still be considered in the context of self–defense. The shooting of the husband must be justified. Based upon her subjective impressions of the potential for danger, the woman must reasonably believe

> that the person slain intends to inflict death or great bodily harm and there is imminent danger of such harm being accomplished.

Instruction 18 in part; *see* WPIC 16.02, 11 Wash. Prac. 109 (1977); *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977).

Whether Kelly was suffering from a state of learned helplessness resulting from the "battered woman syndrome" and whether that condition with all of the other circumstances justified her shooting her husband were questions for the jury to resolve. The evidence of the "battered woman syndrome" was properly offered by the accused to establish a trait of her character. ER 404(a)(1). The evidence of previous specific acts of aggression, particularly those directed at the decedent, was properly admitted in rebuttal under ER 405(b). Whatever the jury believed or disbelieved, it should be remembered that self–defense was the ultimate issue.

■ The next question is whether the trial court abused its discretion in not authorizing funds for travel expenses for a defense witness. According to an affidavit filed in support of the motion to allow the expenses, the witness, a doctor, would have testified that Kelly sustained bruises and injuries allegedly inflicted by her husband.

CrR 3.1(f) provides in part:

> **(f) Services Other Than Counsel.** Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them by a motion. *Upon a finding that the services are necessary* and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. The courts, in the interest of justice and

on a finding that timely procurement of *necessary services* could not await prior authorization, shall ratify such services after they have been obtained.

(Italics ours.) In the absence of a showing of necessity, the court need not grant a motion for payment for an expert's services from public funds. *State v. Dickamore,* 22 Wn. App. 851, 854, 592 P.2d 681 (1979).

The doctor's testimony would have been cumulative and unnecessary. Two witnesses corroborated Mrs. Kelly's testimony regarding the beating incident in December 1978, and there was other testimony substantiating the genuineness of her injuries on other occasions. Further, a medical report signed by the doctor describing the injuries and treatment administered to Kelly in December 1978 was admitted at trial.

Finally, Kelly contends that a remand is necessary to determine the basis for the lower court ruling at a CrR 3.5 hearing held prior to trial that certain incriminating statements she made at the time of her arrest were admissible. The record includes a verbatim report of the pretrial hearing setting forth the court's oral ruling and testimony of the witnesses. In these circumstances, an appellate court may examine the record and make its own determination of voluntariness. *State v. Vickers,* 24 Wn. App. 843, 846, 604 P.2d 997 (1979). *State v. Hoyt,* 29 Wn. App. 372, 379, 628 P.2d 515, *review denied,* 95 Wn.2d 1032 (1981). The record supports the ruling. We also observe that no objection was made to admission of the statements at trial.

Affirmed.

ANDERSEN, C.J., and CORBETT, J., concur.

Reconsideration denied April 7, 1983.

Review granted by Supreme Court July 22, 1983.