[No. 49584–0.   En Banc.   June 28, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. IVY
GAIL KELLY, *Petitioner.*

*John Henry Browne, David R. Wohl,* and *Browne, Ressler & Foster,* for petitioner.

*Seth Dawson, Prosecuting Attorney, Larry E. McKeeman, Chief Criminal Deputy,* and *S. Aaron Fine, Deputy,* for respondent.

*Rosemary P. Bordlemay* on behalf of Northwest Women's Law Center, amicus curiae for petitioner.

STAFFORD, J.—Petitioner, Ivy Gail Kelly, appeals her conviction for second degree murder. The State did not

object, at trial or on appeal, to expert testimony on the applicability of the "battered woman syndrome" as explanatory of petitioner's actions under a claim of self–defense. The issue before us is whether evidence of petitioner's alleged prior aggressive acts is properly admissible to rebut such expert testimony. We hold it is not. Petitioner also asserts the trial court improperly refused her funds for the transportation of a medical witness. We hold the trial court did not abuse its discretion in this regard.

Petitioner shot and killed her husband Jack Kelly in their home on August 30, 1980. At trial, Mrs. Kelly admitted killing him but asserted she had acted in self–defense. She contended that her husband had physically beaten her during their marriage and at the time of the shooting she feared another episode of physical abuse.

Petitioner called an expert witness to testify about what has been called the "battered woman syndrome". The witness was asked: "What, if any, information did you obtain from Mrs. Kelly which led you to conclude either that she was battered or was not battered, and which behavioral characteristics did she fit?" The expert described behavioral characteristics which Mrs. Kelly exhibited. These included: frustration; stress disorders; depression; economic and emotional dependence on her husband; hopes that the marital relationship would improve; poor self–image; isolation; and learned helplessness. "Isolation" was described as a loss of contact with family and friends. "Learned helplessness" was deemed explanatory of why a battered woman would remain in a harmful relationship. It was said to arise because of the woman's fear and the unpredictability of batterings, which would lead to a feeling of surrender and a failure to realize or know options available to escape the relationship. The behavioral characteristics exhibited by Mr. Kelly and Mrs. Kelly led the expert to conclude they fit the categories of a "batterer" and a "battered woman".

As part of its rebuttal case, the State made an offer of proof that one witness, Mr. Bambrough, would testify Mrs. Kelly accused him of trespass and threatened to injure him.

A further offer was made that a second witness, Mrs. Penhollow, would testify she observed Mrs. Kelly pounding on the back door of the Kellys' home with a shovel while Mr. Kelly was inside. Further, it was said Mrs. Penhollow would also testify that, on another occasion, Mrs. Kelly was verbally abusive when Mrs. Penhollow sought to clean an easement between their adjacent properties.

Defense counsel moved in limine to exclude the testimony of both rebuttal witnesses. At the close of the defense case, the trial judge heard argument on the motion and thereafter denied it, stating the proposed evidence would rebut or answer the expert testimony regarding "isolation" and "learned helplessness".

Subsequently, the State's two rebuttal witnesses testified in conformance with the previous offers of proof, without further defense objection. The jury subsequently convicted petitioner of second degree murder.

The Court of Appeals affirmed the conviction. *State v. Kelly*, 33 Wn. App. 541, 655 P.2d 1202 (1982). It held that "[t]he evidence of the 'battered woman syndrome' was properly offered by the accused to establish a trait of her character. ER 404(a)(1). The evidence of previous specific acts of aggression, particularly those directed at the decedent, was properly admitted in rebuttal under ER 405(b)." *State v. Kelly, supra* at 544. We find the analysis of the Court of Appeals incorrect and reverse.

I

First, the State contends defense counsel's motion in limine was insufficient to preserve for appeal the issue of admissibility of the rebuttal evidence. We do not agree.

There is some conflict in the Court of Appeals as to whether a motion in limine, standing alone, preserves an evidentiary objection. *Compare State v. Austin*, 34 Wn. App. 625, 662 P.2d 872, *aff'd on other grounds sub nom. State v. Koloske*, 100 Wn.2d 889, 676 P.2d 456 (1984) *and State v. Wilson*, 29 Wn. App. 895 (1981) (ruling on motion in limine is tentative; error is not preserved absent objec-

tion in the course of trial) *with State v. Moore,* 33 Wn. App. 55, 651 P.2d 765 (1982) (denial of defendant's motion in limine reviewable despite defendant's failure to object in the course of trial) *and State v. Latham,* 30 Wn. App. 776, 780, 638 P.2d 592 (1981), *aff'd on other grounds,* 100 Wn.2d 59, 667 P.2d 56 (1983) (disposition of some motions in limine can only be determined at trial; other motions in limine are appropriately the subject of final ruling prior to trial).

In *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 91, 549 P.2d 483 (1976), we set forth the rules governing trial court consideration of motions in limine:

> [T]he trial court should grant such a motion if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn or which may develop during the trial, and if the evidence is so prejudicial in its nature that the moving party should be spared the necessity of calling attention to it by objecting when it is offered during the trial.

*See also State v. Evans,* 96 Wn.2d 119, 123, 634 P.2d 845 (1981), 649 P.2d 633 (1982). The trial court in *Fenimore* denied the motion in limine and directed the moving party to object as the disputed evidence was offered, noting that its relevance could be determined only in the context of trial.

In contrast to *Fenimore,* the trial court here was able to make a determination as to the admissibility of the questioned testimony prior to its introduction at trial. The motion in limine was argued after the entire defense case had been presented, thus the trial court had an opportunity to evaluate precisely what defense evidence the disputed testimony would rebut. Defense counsel set forth the legal basis of objection to the rebuttal evidence and a complete record of the motion argument was made. Rather than instructing counsel to object as the evidence was offered, the trial judge made a final ruling on the motion in limine.

Under these circumstances, defense counsel was not

required to lodge a subsequent objection to the rebuttal evidence at the time of its admission. "The purpose of a motion in limine is to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presentation." *State v. Evans, supra* at 123. Unless the trial court indicates further objections are required when making its ruling, its decision is final, and the party losing the motion in limine has a standing objection. *State v. Koloske, supra.*

## II

Next we must determine whether the State's rebuttal testimony was properly admitted as character evidence. Insofar as relevant here, character evidence has two distinct functions: (1) to prove a pertinent trait of character and (2) to prove character as an essential element of the case.[1] Also relevant here are the different methods of proving character set forth in ER 405: (1) by reputation testimony and cross examination of character witnesses as to specific instances of conduct, and (2) by specific instances of conduct. Our analysis of the propriety of admission of the rebuttal testimony must focus on how the evidence fits within each of these functions and within each of these methods of proof.

## A
### Pertinent Trait of Character

Character evidence may be used circumstantially to show that a person acted consistently with that character. This use of character evidence to show conformity is generally rejected, however, in the first paragraph of ER 404(a), which provides: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . ." The three subsections of ER 404(a) provide exceptions to this general rule. Thus, under certain circumstances, proof is permitted of the character of an *accused*, a

---

[1]A third function of character evidence, impeachment of the credibility of a witness, is not involved here.

*victim,* and a *witness.* We are here concerned with the character of an *accused* and hence, with ER 404(a)(1). Under this provision, an accused may offer evidence of a pertinent trait of character which the prosecution may then rebut.

The Court of Appeals found the expert's testimony was properly admitted as evidence of a pertinent trait of character under ER 404(a). Thus, it opined, the State's rebuttal evidence was properly admitted under ER 405(b). This is a misconstruction of the rules which confuses the two separate purposes for which character evidence is admissible. Contrary to the appellate court's analysis, ER 405(b) is inapplicable to evidence offered as rebuttal of a pertinent trait of character. As discussed below, ER 405(b) applies only when character is *an essential element of a charge, claim, or defense.*

The Court of Appeals also ignored the allowable methods of proving pertinent traits of character. When an accused offers evidence of a pertinent trait of character, ER 405(a) governs the allowable methods of proof. Testimony may be offered as to the reputation of the accused in the community. ER 405(a). *See State v. Argentieri,* 105 Wash. 7, 10, 177 P. 690 (1919) (proper method of questioning character witnesses). Upon cross examination of character witnesses, inquiry may be made into specific instances of conduct. Where character witnesses are cross–examined as to their personal knowledge of acts of misconduct of the accused, the primary purpose of such cross examination must be to impeach the testimony of the character witnesses, not to discredit the person on trial. *State v. Styles,* 93 Wn.2d 173, 606 P.2d 1233 (1980); *State v. Donaldson,* 76 Wn.2d 513, 458 P.2d 21 (1969); *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952). The same method of proof is applicable when the prosecution seeks to rebut the accused's evidence of a pertinent trait of character.

■■ Assuming, for the purpose of discussion, the expert's testimony constituted evidence of a pertinent trait of character, the expert's opinion thereon would not have

been admissible. Unlike the federal Rules of Evidence, Washington's evidentiary rules do not permit proof of character by opinion testimony. Comment, ER 405, 91 Wn.2d 1135 (1979); *State v. Woodard,* 26 Wn. App. 735, 617 P.2d 1039 (1980). Further, even assuming petitioner could have offered evidence of a pertinent trait of character by means of the expert testimony, the State's evidence of prior acts was not proper rebuttal. When an accused offers evidence of a pertinent trait of character, it may be rebutted by cross examination of character witnesses or contrary proof of reputation in the community, not by evidence of specific instances of misconduct. ER 405(a). *See State v. Putzell,* 40 Wn.2d 174, 182, 242 P.2d 180 (1952).

█ Our finding of error does not rest on the improper method of proof alone. We also find the expert testimony did not in fact constitute evidence of a pertinent trait of character within the meaning of ER 404(a)(1). We do not attempt to formulate a general definition of the amorphous concept of "character". Our focus is considerably narrower. We are concerned with whether the expert testimony offered by petitioner Kelly was evidence of her character at all *as the term is used in ER 404(a)(1).*

A defendant offers evidence of a pertinent trait of character to show that he or she acted in conformity with that character. Character witnesses offered by an accused typically testify that the defendant has a reputation for being a good, honest, law–abiding and/or peaceful person. *E.g., State v. Riggs,* 32 Wn.2d 281, 283, 201 P.2d 219 (1949); *United States v. Angelini,* 678 F.2d 380 (1st Cir. 1982); *Darland v. United States,* 626 F.2d 1235 (5th Cir. 1980). From such testimony, the defendant generally seeks to have the jury conclude that one of such character would not have committed the crime charged. *See Michelson v. United States,* 335 U.S. 469, 475–76, 93 L. Ed. 168, 69 S. Ct. 213 (1948).

Mrs. Kelly did not introduce the expert testimony to show that at the time she shot her husband, she acted in conformity with behavioral characteristics which were said

to comprise the "battered woman syndrome". Rather, the expert testimony was offered to aid the jury in understanding the reasonableness of Mrs. Kelly's apprehension of imminent death or bodily injury.[2] See State v. Allery, 101 Wn.2d 591, 682 P.2d 312 (1984). The "battered woman syndrome" testimony was therefore not offered as evidence of a pertinent trait of character. Rather the expert testimony was offered to aid the trier of fact in understanding the evidence and determining a fact in issue (i.e., self–defense). ER 702.

## B
### CHARACTER AS AN ESSENTIAL ELEMENT

When character is itself an essential element of the charge, claim or defense, it may be proved by evidence of specific instances of conduct. ER 405(b). The State argues petitioner testified that when her husband was shot, she was neither the aggressor nor a mutual combatant. Thus, it is urged, petitioner injected her character into the case and made her prior aggressive acts admissible under ER 405(b). While the Court of Appeals found the prior acts admissible under this evidentiary rule it is not clear whether the appellate court believed character was an essential element in the case or merely confused the proper method of rebutting a pertinent trait of character. We hold the rebuttal evidence was not admissible under ER 405(b).

Character is an "essential element" in comparatively few cases. 22 C. Wright & K. Graham, Federal Practice § 5235 (1978). In criminal cases, character is rarely an essential element of the charge, claim, or defense. 5 K. Tegland,

---

[2]In considering a self–defense claim, an evaluation of the defendant's actions in light of her subjective impressions and all the facts and circumstances known to her is required under State v. Wanrow, 88 Wn.2d 221, 240, 559 P.2d 548 (1977). Expert testimony on the "battered woman syndrome" may assist the trier of fact in making this evaluation. Of course, the presence of the "battered woman syndrome" in a marriage does not provide justification for killing one's husband. Petitioner Kelly has never argued nor even intimated, however, that because she suffered from the "battered woman syndrome", she had a legal right to shoot her husband.

Wash. Prac., *Evidence* § 126, at 312 (1982). For character to be an essential element, character must itself determine the rights and liabilities of the parties. 2 J. Weinstein & M. Berger, *Evidence* ¶ 404[02] (1979). *See, e.g., Getchell v. Auto Bar Sys. Northwest, Inc.,* 73 Wn.2d 831, 839, 440 P.2d 843 (1968) (defamation); *Thompson–Cadillac Co. v. Matthews,* 173 Wash. 353, 358, 23 P.2d 399 (1933) (negligent employment).

The expert's testimony was part of the presentation of petitioner's self–defense theory. Where self–defense is asserted, "the defendant's actions are to be judged against her own subjective impressions and not those which a detached jury might determine to be objectively reasonable." *State v. Wanrow,* 88 Wn.2d 221, 240, 559 P.2d 548 (1977). The jury is to consider whether the petitioner reasonably believed that she was in imminent danger of death or great bodily harm, in light of all the facts and circumstances known to her. *Wanrow,* at 234. This standard may conceivably involve some very minor consideration of the petitioner's character but character is not itself an essential element of a self–defense claim as is required by ER 405(b). *See* Weissenberger, *Character Evidence Under the Federal Rules: A Puzzle With Missing Pieces,* 48 U. Cin. L. Rev. 1, 5 (1979). Since character is not an essential element of a self–defense claim, petitioner's character was irrelevant, and evidence of her prior aggressive acts was inadmissible to show her character.

### III

The State raises several additional arguments in support of the admissibility of its rebuttal evidence. We reject each of them.

The State asserts the rebuttal testimony was admissible by analogizing this case to one in which a defendant offers a plea of not guilty by reason of insanity. It contends that in an insanity defense, any prior conduct of a defendant that bears on his mental condition is admissible. Wide latitude in the admission of evidence is appropriate because if a

specific act does not indicate insanity, it may indicate sanity. *State v. Odell,* 38 Wn.2d 4, 19–21, 227 P.2d 710 (1951). The State argues that petitioner put her mental state in issue thereby making relevant any evidence bearing thereon.

Self–defense and insanity raise very different concepts. In an insanity defense, the relevant inquiry is whether the mind of the accused was so affected or diseased at the time of the crime charged that he could not tell right from wrong and perceive the moral qualities of his act. *State v. Reece,* 79 Wn.2d 453, 454, 486 P.2d 1088 (1971). In contrast, in a self–defense claim the appropriate inquiry is whether the defendant reasonably apprehended imminent death or bodily injury. *See State v. Wanrow, supra. Cf. Hawthorne v. State,* 408 So. 2d 801 (Fla. Dist. Ct. App. 1982). The expert's testimony was not offered to show that the batterings so affected defendant's mental state that she could not tell right from wrong and perceive the moral qualities of the act. It was offered to explain the reasonableness of her fear of imminent danger. Thus, we are not persuaded by the State's analogy.

The State also asserts that the rebuttal evidence was admissible under ER 404(b) to show motive, intent, or absence of mistake or accident. Before evidence of prior crimes, wrongs, or acts can be admitted, it must be shown to be logically relevant to a material issue before the jury and its probative value must be shown to outweigh its potential for prejudice. *State v. Saltarelli,* 98 Wn.2d 358, 361–62, 655 P.2d 697 (1982); *State v. Robtoy,* 98 Wn.2d 30, 653 P.2d 284 (1982). We have reviewed the record and are convinced none of the rebuttal evidence logically supports an inference of motive, intent, or absence of mistake or accident. Further, petitioner's theory was one of self–defense, not absence of mistake or accident.

Finally, the State maintains the rebuttal testimony was properly admitted in response to the defense expert's testimony that petitioner suffered from "learned helplessness" and "isolation". The rebuttal testimony, however, was

irrelevant and collateral with respect to both. *See State v. Putzell*, 40 Wn.2d 174, 183, 242 P.2d 180 (1952); *State v. Johnson*, 192 Wash. 467, 73 P.2d 1342 (1937). Learned helplessness is a term used to explain why a battered woman remains in a relationship that is both psychologically and physically harmful. Testimony that petitioner once beat on her door with a shovel has no bearing upon her inability to extricate herself from the marital relationship. Similarly, testimony that she had poor relations with her neighbors at some time in the past is not relevant to rebut evidence explaining her gradual loss of contact with her family and friends.

## IV

■ Having concluded that the State's rebuttal evidence was improperly admitted, we must next decide whether the error was prejudicial and hence, reversible. The evidentiary error was not of constitutional magnitude; therefore we must apply the rule that error is prejudicial only if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981); *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

The Rules of Evidence strictly confine the use of a defendant's prior bad acts because such evidence has a great capacity to arouse prejudice. *See* ER 404, 405, 608, Fed. R. Evid. 405 advisory committee note. As was eloquently expressed by Justice Jackson in *Michelson v. United States*, 335 U.S. 469, 475–76, 93 L. Ed. 168, 69 S. Ct. 213 (1948):

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair

opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

(Footnotes omitted.) *Cf. State v. Saltarelli, supra.* The restrictions on the use of extrinsic evidence of prior specific instances of conduct are thus a recognition of the axiom that a defendant should be tried only for the offense charged. *State v. Mack,* 80 Wn.2d 19, 21, 490 P.2d 1303 (1971); *State v. Emmanuel,* 42 Wn.2d 1, 253 P.2d 386 (1953).

Petitioner was on trial for the murder of her husband. She was not on trial for yelling at her neighbors or for beating on her own door with a shovel. The admission of evidence of these irrelevant prior specific acts of conduct could only distort the true issues at trial. The admission of this evidence would be prejudicial and hence constitutes reversible error.

## V

Finally, petitioner has assigned error to the trial court's refusal to authorize funds for travel expenses of a physician who treated her after a beating by her husband. She argues that failure to provide funds deprived her of her constitutional right to a fair trial, effective assistance of counsel, and compulsory process. We disagree.

■ CrR 3.1(f) controls the authorizations of funds for services other than counsel and provides, in pertinent part:

Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them by a motion. Upon finding that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant.

This rule incorporates constitutional requirements by recognizing that funds must be provided where *necessary* to an adequate defense. *See Mason v. Arizona,* 504 F.2d 1345,

1351–52 (9th Cir. 1974), *cert. denied,* 420 U.S. 936 (1975). Thus, denial of funds is proper where the witness's testimony is not a *necessity. See State v. Mines,* 35 Wn. App. 932, 671 P.2d 273 (1983); *State v. Anderson,* 33 Wn. App. 517, 655 P.2d 1196 (1982); *State v. Niemczyk,* 31 Wn. App. 803, 644 P.2d 759 (1982); *State v. Dickamore,* 22 Wn. App. 851, 592 P.2d 681 (1979).

Since other evidence substantiating the genuineness of petitioner's injuries, including the physician's medical report, was admitted, the physician's testimony, while relevant, was not necessary. In light of the corroborating evidence, the trial court did not abuse its discretion in refusing to authorize funds.

We reverse the Court of Appeals and remand for a new trial.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.

ROSELLINI, J., concurs in the result.

DORE, J. (dissenting)—The majority holds evidence of defendant's prior aggressive acts toward her husband and others is inadmissible to rebut expert testimony on the battered woman syndrome. This decision effectively silences prosecutors when faced with a self–defense claim based, in part, on the contention that the defendant was the victim in a battering relationship. While we recently unanimously approved the admission of expert testimony on the battered woman syndrome, *State v. Allery,* 101 Wn.2d 591, 682 P.2d 312 (1984), nothing in that opinion suggests the prosecution should be precluded from factually contesting whether the defendant was a battered woman and truly fearful of her spouse. Today's decision creates a shield which immunizes the woman's claim that she was battered from any reasonable challenge by the prosecution. I dissent.

I

In *Allery,* we specifically articulated the function of

expert testimony on the battered woman syndrome:

We find that expert testimony explaining why a person suffering from the battered woman syndrome would not leave her mate, would not inform police or friends, and would fear increased aggression against herself would be helpful to a jury in understanding a phenomenon not within the competence of an ordinary lay person. *Smith v. State,* [247 Ga. 612, 277 S.E.2d 678 (1981)]. Where the psychologist is qualified to testify about the battered woman syndrome, and the defendant establishes her identity as a battered woman, expert testimony on the battered woman syndrome is admissible. This evidence may have a substantial bearing on the woman's perceptions and behavior at the time of the killing and is central to her claim of self–defense. *State v. Anaya,* 438 A.2d 892 (Me. 1981).

Our holding today is in harmony with our decision in *State v. Wanrow,* [88 Wn.2d 221, 559 P.2d 548 (1977)]. There we held that the jury must consider all the facts and circumstances known to the woman at the time of the killing in evaluating her claim of self–defense. To effectively present the situation as perceived by the defendant, and the reasonableness of her fear, the defense has the option to explain her feelings to enable the jury to overcome stereotyped impressions about women who remain in abusive relationships. It is appropriate that the jury be given a professional explanation of the battering syndrome and its effects on the woman through the use of expert testimony.

101 Wn.2d at 597.

Thus, the function of this expert testimony is to aid the jury in evaluating the reasonableness of defendant's actions at the time of the homicidal act in the context of her claim of self–defense. In the instant case, a series of witnesses testified for the defendant about their observations of the history of violence and abuse Mrs. Kelly suffered at the hands of her husband. An expert witness then testified at great length about the battered woman syndrome and concluded that defendant, indeed, displayed the characteristics of a battered woman. She testified that battered women live in terrible fear of their battering mates. In the batter-

ing relationship, the woman is reduced to a condition of "learned helplessness". Because of her fear and the unpredictability of the battering incidents, the battered woman is physically and psychologically unable to extricate herself from the abusive relationship.

The State introduced evidence of defendant's prior aggressive acts to *rebut* this testimony that defendant was a battered woman. Rebuttal evidence is admissible where new matter has been developed by the defendant's evidence. *See* 6 J. Wigmore, *Evidence* § 1873 (3d ed. 1940); *State v. Kroll,* 87 Wn.2d 829, 841, 558 P.2d 173 (1976). The admissibility of rebuttal evidence rests largely on the trial court's discretion, and error can be predicated only upon a manifest abuse of that discretion. *State v. White,* 74 Wn.2d 386, 444 P.2d 661 (1968).

The record in this case reveals no such abuse of discretion. Defendant moved to exclude the prosecution's rebuttal evidence. In denying this motion, the trial court simply ruled that evidence of defendant's prior aggressive acts was relevant rebuttal to defense testimony on the battered woman syndrome. It stated:

> The reasons for . . . denying the motion of the defendant is that both the expert witness testified on behalf of the defendant and the defendant herself have indicated that one of the characteristics of the abused wife, that is containment or isolation caused by the victim in this case, was part of the pattern. I think this is some evidence that the defendant herself was, at least in part, the cause of the isolation, if such isolation existed. Number two, the learned helplessness characteristic testified to by the expert witness, in my view, is something that this type of testimony could fairly rebut or answer.

Report of Proceedings, at 285–86.

The majority correctly held that the State's rebuttal evidence is inadmissible as *character* evidence because expert testimony on the battered woman syndrome does not implicate the defendant's *character* for purposes of ER 404(a). It then, however, arbitrarily dismisses this rebuttal testimony as irrelevant and collateral to defendant's expe-

rience as a battered woman.

ER 401 defines the concept of relevancy:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Any circumstance is relevant which reasonably tends to establish the theory of a party or to qualify or disprove the testimony of his adversary. *State v. Demos,* 94 Wn.2d 733, 736, 619 P.2d 968 (1980). Defendant's theory of the case was that, as a battered woman, she reasonably believed herself to be in serious danger at the hands of her husband when the shooting occurred. Her expert testified that she displayed the characteristics of a battered woman, including a terrible fear of her husband and the crippling effects of "learned helplessness". The State's rebuttal testimony concerning defendant's prior acts of aggression toward her husband and neighbors suggests that she did not, in fact, live in this crippled state of "learned helplessness".

One witness testified that defendant shouted obscenities at him and threatened him with bodily harm when he worked at cleaning an easement between their two properties. A second testified that she had observed the defendant standing in the driveway when her husband had locked her out of the house. The witness testified that Mr. Kelly stood inside the door with a gun in his hand, while Mrs. Kelly pounded repeatedly on the house door and car door with a shovel.[3]

---

[3]This witness testified:

"Q (By Ms. Norris) Mrs. Penhollow, calling your attention to approximately sometime in the winter of 1978, do you ever recall observing Mrs. Kelly in the back yard of the Kelly residence under unusual circumstances?

"A Yes.

"Q Can you describe those circumstances to the jury?

"A We heard a lot of noise outside, so we were in our family room and we looked out the window, which overlooks their back yard, and she was out in the back yard.

"Q Could you see what she was doing at that time?

"A Well, she was standing outside. She was very mad.

"Q How do you know she was very mad? What did you see that would lead

I find no abuse in the trial court's discretion in admitting this rebuttal testimony. The primary emotion of a battered woman is fear. *Smith v. State,* 247 Ga. 612, 277 S.E.2d 678 (1981). The use of expert testimony on the battered woman syndrome to explain the defendant's state of mind with respect to her self-defense claim creates a material issue concerning whether the defendant experienced learned

you to believe that she was mad?

"A Well, she was yelling and screaming.

"Q Was your window open in your family room?

"A Up.

"Q Or was there—was there any kind of open window?

"A No, the windows were closed because it was in the winter.

"Q Could you hear her fairly well?

"A That's why we got up.

"Q Did you see her doing anything?

"A Yes.

"Q What did you see her doing?

"A Well, I saw her pick up a shovel and start to beat the back door.

"Q Would that be the back door of the Kelly residence?

"A Yes.

"Q Did you see her doing anything with reference to any vehicles in the back yard?

"A Well, when she couldn't get in, then she started pounding on the cars that were parked out in the back.

"Q Was that with the shovel also?

"A No.

"Q Did you observe Mr. Kelly on that occasion?

"A Yes.

"Q And when did you observe him?

"A The same time.

"Q Where was he?

"A He was inside the house, standing right inside the back door.

"Q And did you see what he did?

"A He was standing there, and he had a gun, and he didn't want her to come in.

"Q Did she still have the shovel?

"A I don't remember exactly at that point if she had the shovel or not.

"Q Did the police come on that incident?

"A They came.

"Q Do you remember how Mrs. Kelly responded to the police?

"A Well, she was very angry at the police.

"Q How did you know that?

"A Because there were several patrolmen outside the back door and she was swearing at them."

helplessness and lived in constant fear of her husband. *State v. Allery, supra.* It was appropriate that the jury was presented with evidence that the defendant's actions toward her husband were not typical of a woman suffering from the battering syndrome. Evidence that, on prior occasions, Mrs. Kelly uttered threats of violence against neighbors and attacked her husband with a shovel was relevant and proper to show that she did not experience the crippling fear of a battered woman. There was no error in the admission of this testimony.

## II

The majority's reversal of this conviction constitutes a flagrant invasion of the province of the jury as the trier of fact. The jury was properly presented with conflicting evidence on whether defendant displayed the characteristics of a battered woman. Aided by this testimony, they were to determine the reasonableness of defendant's self–defense claim in light of all the facts and circumstances known to her at the time of the shooting. *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977). Instruction 18, the self–defense instruction, provides in part:

> It is for you to determine whether or not the defendant had reasonable ground to apprehend imminent death or great bodily harm, and in deciding that question you should judge from the defendant's standpoint at the time of the occurrence; that is to say, you should take into consideration all the facts and circumstances bearing on the question, *including those known to defendant which occurred substantially before the incident.* The kind and degree of force which the defendant may lawfully use in self–defense is limited by what a reasonable person in the same situation as the defendant, seeing what she sees and knowing what she knows, then would believe to be necessary.

(Italics mine.) Clerk's Papers, at 35.[4] Thus, the jury consid-

---

[4] In *State v. Allery,* 101 Wn.2d 591, 682 P.2d 312 (1984), the trial court failed to instruct the jury to consider all facts and circumstances known to the defendant *which occurred substantially before the incident.* We held this was reversible error because the jury was not adequately instructed to consider the history of

ered all the evidence of the history of violence in the Kelly marriage and determined that defendant's actions in shooting her husband were neither reasonable or justifiable. It is not the proper function of this court to simply reject this jury determination and award a new trial.

## III

The majority also rejects the State's analogy of the battered wife syndrome to an insanity defense by pointing out the conceptual differences between the insanity defense and self–defense. This misinterprets the substance of the analogy. As the majority correctly points out, the evidence of the battered woman syndrome does not provide a new defense to a murder charge, but rather is introduced to aid the jury in evaluating the defendant's self–defense claim in light of her subjective impression at the time of the homicidal act. Majority, at 196 n.2; *see also State v. Allery, supra.* The function of expert testimony on the battered woman syndrome is to explain why a battered woman has an overwhelming sense of fear of her abuser and is *psychologically* unable to escape her tragic situation. *See* Comment, *The Admissibility of Expert Testimony on Battered Wife Syndrome: An Evidentiary Analysis,* 77 Nw. U. L. Rev. 348, 360–61 (1982). To this extent, evidence of the syndrome places the woman's mental or psychological condition at issue. Thus, as in insanity cases, evidence of prior conduct of the defendant which reveals an absence of her sense of entrapment and overwhelming fear of her abuser should be admissible. *Cf. State v. Huson,* 73 Wn.2d 660, 440 P.2d 192 (1968), *cert. denied,* 393 U.S. 1096 (1969).

---

marital violence which formed the basis of defendant's contention that she was a battered woman. This was central to her theory of self–defense. It was necessary for the jury to consider the history of batterings to adequately evaluate the reasonableness of defendant's actions. *See Allery,* at 594–95. The instruction in the present case directs the jury's attention to the history of marital violence. Whether the defendant was a "battered woman" was a factual question for the jury to consider in light of all the testimony concerning the violence in the Kelly marriage.

CONCLUSION

I find no abuse of the trial court's discretion in admitting evidence of defendant's prior aggressive acts in rebuttal to expert testimony that she was a battered woman. I would affirm the conviction.