[No. 14619-3-II.    Division Two.    March 8, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. TED EAKINS, *Appellant.*

*Michael A. Dunn* and *Law Offices of Michael A. Dunn,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Brian Moran, Deputy,* for respondent.

PETRICH, J.* — In May 1980, Ted Eakins confronted Shelly Lindahl, his former girlfriend, at her place of employment. He

---

*Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

pulled out a revolver from his coat and, in a threatening manner, pointed it at her and a fellow employee, who had come to her assistance. He was charged and convicted on jury verdicts of two counts of second degree assault in violation of RCW 9A.36.021(1)(c).[1] Special verdicts imposing the deadly weapon enhancement were entered on both counts.

Eakins appeals, contending he was charged in violation of his right to equal protection because the charged offense, on each count, bears a more severe penalty than what he claims is the concurrent offense of exhibiting a firearm, RCW 9.41.270.[2] He also contends the trial court erred in excluding proffered evidence of his character as a peaceful and law-abiding citizen.[3]

We conclude that Eakins was charged properly, but that the trial court erred in excluding evidence of Eakins's character as a peaceful and law-abiding citizen. Thus, we reverse.

### EQUAL PROTECTION CHALLENGES[4]

Eakins asserts that the assault statute with which he was charged, RCW 9A.36.021(1)(c), and RCW 9.41.270,

---

[1]RCW 9A.36.021(1)(c) provides:

"(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

". . . .

"(c) Assaults another with a deadly weapon".

[2]RCW 9.41.270(1) in pertinent part provides:

"It shall be unlawful for anyone to carry, exhibit, display or draw any firearm, . . . or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons."

[3]The State cross-appeals contending the trial court erred in excluding the weapon enhancement provision, RCW 9.94A.310(3)(c), on one of the counts in imposing the sentence. The State misperceives the trial court's handling of the weapons enhancement provision. The trial court enhanced both counts and imposed concurrent sentences of 24 months, which was within the standard range. At oral argument before this court, the State conceded that even if only one count were enhanced the sentence would be the same because of the imposition of concurrent sentences. We need not address the State's cross appeal any further.

[4]In his argument supporting a claim for an equal protection violation, Eakins cites cases dealing with the propriety of charging an offense under a general statute rather than a concurrent special statute that imposes a different pen-

which proscribes exhibiting a firearm, violate his right to equal protection of the law. He relies on the often repeated rule that statutes imposing different punishments for the same act violate the equal protection clause of the Fourteenth Amendment and article 1, section 12 of the Washington State Constitution when they purport to authorize the State to charge one person with a felony and another with a misdemeanor for the same act committed under the same circumstances. *Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956). *See also State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990); *State v. Dictado*, 102 Wn.2d 277, 687 P.2d 172 (1984).

In *State v. Hupe*, 50 Wn. App. 277, 748 P.2d 263 (1988), *review denied*, 110 Wn.2d 1019 (1988), the court faced a challenge similar to ours. The defendant was charged with and convicted of second degree assault, not of exhibiting a firearm. The court found no equal protection violation, reasoning that the two offenses had different elements, requiring the State to prove a higher degree of culpability to prove the assault charge, namely, that the assault be made knowingly. The exhibiting a firearm statute simply proscribed the display of a firearm that manifested "an intent to intimidate another or that warrants alarm". RCW 9.41.270(1). Thus, the court reasoned that one could commit the offense of unlawful display without committing second degree assault.

Eakins contends that the analysis in *Hupe* no longer applies because the Legislature excised the knowledge element of second degree assault from the statute.[5] Nonethe-

alty. The principles mandating a charge under the special statute are entirely different from those implicating equal protection rights. It is the doctrine of statutory preemption that bars a prosecution under the general statute, not the equal protection clause. *State v. Shriner*, 101 Wn.2d 576, 681 P.2d 237 (1984). When a special statute punishes the same conduct that is punished under a general statute, the State has no charging discretion. The accused can only be charged under the special statute; thus, there is no denial of equal protection. *State v. Cann*, 92 Wn.2d 193, 197, 595 P.2d 912 (1979). Eakins does not suggest, nor could he, that exhibiting a firearm, RCW 9.41.270, is a special statute concurrent with second degree assault, RCW 9A.36.021(1)(c), a general statute.

[5]*See* Laws of 1986, ch. 257, §§ 5, 9, both effective July 1, 1988.

less, the identity of elements alone does not demonstrate an equal protection violation.[6]

■ It is firmly established that the identity of elements in two criminal statutes with disparate penalties does not violate the equal protection clause of the Fourteenth Amendment.

> [A] decision to proceed under [a statute with a greater penalty] does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence than [a statute with a lesser penalty] would permit . . .. More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause.

*United States v. Batchelder*, 442 U.S. 114, 125, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979). *See Kennewick v. Fountain*, 116 Wn.2d 189, 192, 802 P.2d 1371 (1991) (overruling *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970) which was characterized as holding that statutes defining the same offense for the same conduct, but prescribing different punishments, violate an individual's right to equal protection).

■ Eakins submitted no authority suggesting that the analysis under article 1, section 12 of the Washington State Constitution is any different from that under the United States Constitution. Thus, we do not decide that issue. *In re Powell*, 117 Wn.2d 175, 197, 814 P.2d 635 (1991), *rev'd on writ of habeas corpus sub nom. Powell v. Ducharme*, 998 F.2d 710 (9th Cir. 1993); *Forbes v. Seattle*, 113 Wn.2d 929, 934, 785 P.2d 431 (1990) (absent analysis of criteria set

---

[6]Despite the legislative amendment, intent, and thus knowledge, is still an element of the offense. *State v. Hopper*, 118 Wn.2d 151, 158-59, 822 P.2d 775 (1992); *State v. Weiding,* 60 Wn. App. 184, 188-89, 803 P.2d 17 (1991), *review denied*, 118 Wn.2d 1030 (1992).

forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), a claim is resolved under the federal constitution rather than under the state constitution).

■ Furthermore, the privileges and immunities clause of article 1, section 12 of the Washington State Constitution and the equal protection clause of the fourteenth amendment to the United States Constitution are substantially identical, prohibiting invidious discrimination by the State in the enactment and enforcement of its laws. *State v. Perrigoue*, 81 Wn.2d 640, 503 P.2d 1063 (1972); *Olsen*, 48 Wn.2d at 550. *See also American Network, Inc. v. Utilities & Transp. Comm'n*, 113 Wn.2d 59, 776 P.2d 950 (1989); *Long v. Chiropractic Soc'y*, 93 Wn.2d 757, 760, 613 P.2d 124 (1980).[7] We find no violation of Eakins's right to equal protection of the law.

## CHARACTER EVIDENCE

The circumstances forming the basis for the criminal charges are not disputed. Eakins had been diagnosed as having a personality disorder and suffering from fits of depression. Lindahl's rejection of their relationship aggravated this depression. Eakins confronted Lindahl at the restaurant where she was employed. When she asked him to leave, he threw either a drinking glass or coffee cup at her and chased her into the cocktail lounge of the restaurant. Mark Hansen, a cook at the restaurant, tried to help Lindahl. Eakins then pulled out a loaded revolver, pointed it at Hansen, and then at Lindahl, holding the weapon to her face and threatening to "blow her brains out".

At trial, Eakins denied that he intended to assault Lindahl and did not recall confronting Hansen. Eakins testified that he had consumed large quantities of drugs and alcohol at home; that he was delirious, thinking that he was

---

[7] In a different context, article 1, section 12 of the state constitution has broader protection than the equal protection clause of the Fourteenth Amendment. *See Carter v. UW*, 85 Wn.2d 391, 536 P.2d 618 (1975) (Const. art. 1, § 12 precludes barring a bona fide indigent from the courtroom who has a claim with probable merit by requiring a filing fee and a bond). It is noteworthy that the *Carter* ruling preceded *Gunwall*.

experiencing a nightmare; that he did not recall going to the restaurant; that the first thing he recalled was a glass flying through the air and hitting Lindahl; that the next thing he recalled was pointing a gun at Lindahl and realizing he was not having a dream when he saw the "look of shock on her face"; and that he handed her the gun and asked forgiveness. To support his claim of diminished capacity, he presented the testimony of a psychiatrist who opined that Eakins's personality disorder, combined with the effects of the large quantities of alcohol and drugs he had consumed, prevented Eakins from forming a specific intent to commit the assaults.

Eakins proffered a number of character witnesses who would testify that his reputation in the community was that of a peaceful law-abiding citizen. The trial court refused to allow these witnesses to testify, reasoning that Eakins failed to dispute the evidence of the physical acts of pointing the weapon in a threatening manner. Had he done so, the court would have admitted his evidence of his character as a peaceful citizen. But, since Eakins did not claim he was lawfully displaying the weapon, or otherwise dispute the physical acts of the confrontation, the trial court, at the State's urging and relying on *State v. Lewis*, 37 Wn.2d 540, 225 P.2d 428 (1950), concluded that character evidence was not relevant as to whether Eakins had the intent to support the assault charges.

According to the State's witness, Eakins did not appear to be intoxicated; he simply became enraged when Lindahl asked him to leave. The officers who interrogated Eakins 4 hours after the incident testified that Eakins's speech was clear and coherent, that he did not appear to be under the influence of drugs or alcohol, and that he was able to relate a clear description of the route he took when leaving the restaurant.

The trial court's reliance on *Lewis* to exclude proffered evidence of Eakins's character was misplaced. Generally, relevant evidence is admissible, ER 402, unless its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, is misleading to the jury, is a cause of undue delay, is a waste of time, or is a cumulation of evidence. ER 403. Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the case more or less probable than it would otherwise be without the evidence. ER 401.

■ An accused in a criminal case is entitled to introduce reputation evidence of a character trait pertinent to rebut the nature of the charge against him. ER 404(a)(1), 405(a); *State v. Arine*, 182 Wash. 697, 48 P.2d 249 (1935). Character evidence may be used circumstantially to show that the accused acted consistently with that character, *State v. Kelly*, 102 Wn.2d 188, 193, 685 P.2d 564 (1984), and is as much a part of the evidence as any other evidence. *State v. Allen*, 89 Wn.2d 651, 657, 574 P.2d 1182 (1978).

In *Lewis,* the defendant was convicted of manslaughter arising out of a hunting accident. The trial court refused to allow the defendant to ask one of his hunting companions, "[w]hat is the fact . . . as to whether or not Mr. Lewis is careful as a hunter and in the use of a gun?" *Lewis,* 37 Wn.2d at 544. In affirming this ruling, our Supreme Court reasoned that the offered testimony had no bearing on whether the accused was negligent or careless when he fired his rifle, since the fact that the accused was "careful in the handling of firearms on other occasions did not tend to prove that he was careful when he fired the shot which killed [the victim]." *Lewis,* 37 Wn.2d at 545.[8]

---

[8]*Lewis* has been characterized as a case dealing with habit rather than a character trait. *Meyers v. Meyers*, 81 Wn.2d 533, 539, 503 P.2d 59 (1972). Habit and character, though different, are sometimes confused:

> Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation. If we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life—in business, at home, in handling [of] automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of responding to a particular kind of situation with a specific type of conduct.

(Footnotes omitted.) Edward W. Cleary, *McCormick on Evidence* § 195, at 574-77 (3d ed. 1984).

*Lewis* does not control this case. The proper method of proof of character is by reputation and not by specific acts. ER 405(a); *State v. Argentieri*, 105 Wash. 7, 10, 177 P. 690 (1919). In *Lewis*, the defendant offered evidence of prior specific acts. Here, the Defendant offered evidence of reputation. The offer in *Lewis* was properly rejected, but the offer here was permitted by ER 405(a).

■ The trial court, as noted above, viewed the proffered character evidence as irrelevant where the underlying circumstances giving rise to the charge are conceded. We have found no authority for excluding such evidence in a criminal case where intent or malice is an essential element of the offense. Rather the proper rule is to allow such evidence at trial:

> Where the doing of the act charged is not in dispute, because conceded, it has been said that character no longer has any probative function, and should not be received, since character certainly cannot be set up merely in excuse. But, after all, so far as in criminal cases the criminal intent remains in issue, the good character of the defendant may be regarded as always relevant to disprove it, and the better way seems to admit it.

(Footnote omitted.) 1A John H. Wigmore, *Evidence* § 56, at 1173-74 (1983). Since intent or malice was an essential element of Eakins's offense, the trial court erred in excluding reputation evidence of his character as a peaceful and law-abiding citizen.[9]

■ Whether this error requires a reversal requires us to determine whether it was unduly prejudicial. Such prejudice is established if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *Kelly*, 102 Wn.2d at 199.

Whether Eakins had the requisite intent to assault the victims was the critical issue at trial. The trial court's instruction defining assault included as an essential ele-

---

[9]In so holding, we note our disagreement with the proposition set forth in *State v. Janes*, 64 Wn. App. 134, 144-45, 822 P.2d 1238 (1992), *rev'd on other grounds*, 121 Wn.2d 220, 850 P.2d 495 (1993), that reputation is not probative of a defendant's mental state where the commission of the act is undisputed.

ment of the crime the intent to inflict bodily harm. The trial court also instructed the jury on the lesser included offense of displaying a weapon, RCW 9.41.270, acknowledging that the evidence could support a showing that Eakins committed the lesser offense, which did not require intent as one of its elements. *State v. Snider,* 70 Wn.2d 326, 422 P.2d 816 (1967).

In *State v. Ray,* 116 Wn.2d 531, 806 P.2d 1220 (1991), the defendant was convicted of incest. At trial, Ray denied that he had engaged in the acts of incest as described by the victim and another household member. The trial court rejected Ray's attempt to present exculpatory evidence of another occupant of the house where the claimed incest took place. The Supreme Court ruled that the exclusion of this evidence was error that was not simply trivial, formal, or academic, but rather prejudicial and requiring reversal. The court reasoned that the proposed witness's testimony supported the defendant's theory and could have influenced a reasonable juror to the defendant's favor where the State's witness presented contradictory testimony on major and minor points. *See also State v. Conklin,* 79 Wn.2d 805, 489 P.2d 1130 (1971) (prejudicial error to exclude corroborative testimony of the defendant's intoxication at the time of the alleged forgery, supporting defendant's theory that he was unable to form the specific intent to commit the offense).

Here, the medical evidence Eakins presented supported his theory that he was incapable of forming the specific intent to assault the victims. Eakins specifically denied that he ever intended to assault anyone; that he did not recall going to the restaurant; and that he was in a dreamlike state until he saw Lindahl's shocked expression and then realized he was not dreaming. Evidence of his character as a peaceful citizen would have corroborated his testimony by showing that the charged acts were inconsistent with his character and would have lent greater credence to the medical evidence that he was incapable of forming the requisite intent. *Kelly.* We believe the character evidence could have influenced a reasonable jury to find Eakins guilty of the

lesser included offense. Thus, we conclude that within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.

The judgment and sentence are reversed. The case is remanded for a new trial.

MORGAN, C.J., and ALEXANDER, J., concur.

Affirmed at 127 Wn.2d 490.